**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KOCH MINERALS SÀRL<br>Chemin Des Primeveres 45<br>Fribourg, 1700<br>Switzerland<br><br>KOCH NITROGEN INTERNATIONAL SÀRL<br>Chemin de Primeveres 45<br>Case Postale 592<br>Fribourg, 1701<br>Switzerland,<br><br>       *Plaintiffs*,<br><br>       *v.*<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA;<br>Ministerio del Poder Popular para Relaciones<br>Exteriores<br>Oficina de Relaciones Consulares<br>Avenida Urdaneta<br>Esquina Carmelitas a Puente Llaguno<br>Piso 1 del Edificio Anexo a la Torre MRE<br>Caracas, 1010<br>República Bolivariana de Venezuela,<br><br>       *Defendant*. | Civil Action No: 17-cv-02559-KBJ |

<u>**PLAINTIFFS KOCH MINERALS SÀRL AND KOCH NITROGEN INTERNATIONAL
SÀRL'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**</u>

# TABLE OF CONTENTS

**Page**

**I.     BACKGROUND** .................................................................................................. **1**

    A.     The ICSID Convention .......................................................................... 2

    B.     Venezuela's Consent To ICSID Arbitration .......................................... 3

    C.     The Koch Plaintiffs Prevailed In ICSID Arbitration Against Venezuela ............. 4

    D.     The Koch Plaintiffs Bring This Proceeding To Enforce The Award Under
           22 U.S.C. § 1650a And Article 54 Of The ICSID Convention ............................ 8

**II.    THE COURT SHOULD ENFORCE THE AWARD UNDER 22 U.S.C. §
1650A** .................................................................................................................. **9**

    A.     This Court Has Jurisdiction To Enforce The Final Award .................................... 9

    B.     Venezuela Was Properly Served In Accordance With The FSIA And
           Failed To Respond Within 60 Days ................................................................... 11

    C.     Venezuela Failed To Answer Within 60 Days Of Service ................................... 14

    D.     The Koch Plaintiffs Have Established Their Claim For Relief ........................... 15

**CONCLUSION** .............................................................................................................. **16**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Angellino v. Royal Family Al-Saud,*
    688 F.3d 771 (D.C. Cir. 2012) ............................................................................12

*Barot v. Embassy of the Republic of Zimbabwe,*
    785 F.3d 26 (D.C. Cir. 2015) ..............................................................................11

*Beer v. Islamic Republic of Iran,*
    574 F.Supp.2d 1 (D.D.C. 2008) ..........................................................................15

*Belkin v. Islamic Republic of Iran,*
    667 F.Supp.2d 8 (D.D.C. 2009) ..........................................................................13

*Blue Ridge Invs., LLC v. Republic of Argentina,*
    735 F.3d 72 (2d Cir. 2013)............................................................................10, 11

*Box v. Dallas Mexican Consulate Generate,*
    487 Fed. Appx. 880 (5th Cir. Aug. 21, 2012) .....................................................13

*Burda Media, Inc. v. Viertel,*
    317 F.3d 292 (2nd Cir. 2005)..............................................................................14

*Chevron Corp. v. Ecuador,*
    795 F.3d 200 (D.C. Cir. 2015) ............................................................................11

*Cont'l Cas. Co. v. Argentine Republic,*
    893 F.Supp.2d 747 (E.D. Va. 2012) ...................................................................11

*Dammarell v. Islamic Republic of Iran,*
    370 F.Supp.2d 218 (D.D.C. 2005) ......................................................................13

*Devengoechea v. Bolivarian Republic of Venezuela,*
    No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755 (S.D. Fla. Apr. 24, 2014) ................13, 14

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru,*
    904 F. Supp.2d 131 (D.D.C. 2012) .....................................................................16

*Gates v. Syrian Arab Republic,*
    580 F.Supp. 2d 53 (D.D.C. 2008) .......................................................................15

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
    863 F.3d 96 (2d Cir. 2017)..........................................................................2, 3, 11

*Mwani v. Bin Laden,*
    417 F.3d 1 (D.C. Cir. 2005) ................................................................................12

*Sealift Bulkers, Inc. v. Republic of Armenia*,
   965 F. Supp. 81 (D.D.C. 1997) ................................................................................15

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
   No. 17-102-RDM, 2018 U.S. Dist. LEXIS 168518 (D.D.C. Sept. 30, 2018).....................2, 3

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
   No. 17-1457 (TJK), 2018 U.S. Dist. LEXIS 211469 (D.D.C. 2018).....................4, 10, 12, 16

## RULES

Federal Rule of Civil Procedure 55(b) ................................................................................1

## STATUTES

22 U.S.C. § 1650a(a) ....................................................................................................2

28 U.S.C. §§ 1330(a) and 1605 ....................................................................................9

28 U.S.C. § 1605(a)(6)(B) ...........................................................................................11

28 U.S.C. § 1608 ..............................................................................................1, 11, 13

28 U.S.C. § 1608(3) ...................................................................................................15

28 U.S.C. § 1608 (a)(1) ..........................................................................................11, 12

28 U.S.C. § 1608(a)(2) .......................................................................................11, 12, 14

28 U.S.C. § 1608(d) ...............................................................................................1, 14

28 U.S.C. § 1608(e) ...................................................................................................15

28 U.S.C. § 1650a ............................................................................................... passim

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*...............................................10

Pursuant to 28 U.S.C. § 1608 and Federal Rule of Civil Procedure 55(b), Plaintiffs and Arbitration Award Creditors Koch Minerals Sàrl ("KOMSA") and Koch Nitrogen International Sàrl ("KNI") (collectively "the Koch Plaintiffs" or "Plaintiffs") move for entry of a default judgment against the Bolivarian Republic of Venezuela ("Venezuela" or the "Defendant").  As described further below,[1] Venezuela was twice served with the summons and complaint in this matter in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1965) ("Hague Service Convention").

Nearly fifteen months have now passed since the service was first effected on Venezuela in January 2018.  Venezuela has failed to serve a pleading responsive to the complaint within 60 days from service as required under 28 U.S.C. § 1608(d).  Accordingly, the Court should therefore enter a default judgment in favor of the Koch Plaintiffs and against Venezuela.

## I.      BACKGROUND

This is an action to recognize and enforce the pecuniary obligations of an arbitral award in favor of the Koch Plaintiffs and against Venezuela (the "Award") issued on October 30, 2017 by a three-member arbitral tribunal ("the Tribunal") constituted pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 (the "ICSID Convention" or the "Convention").  This action is brought pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention.  Second Yanos Decl., Ex. 1.[2]

---

[1] In this brief, "First Yanos Decl." refers to the Declaration of Alexander A. Yanos, dated May 9, 2019 (ECF # 21); and "Second Yanos Decl." refers to the Declaration of Alexander A. Yanos, dated May 16, 2019, in support of the Koch Plaintiffs' Motion for Entry of Default Judgment.

[2] On April 11, 2018, the Tribunal issued a decision correcting an error in calculation of the amount awarded to KNI under the Award ("Decision on Rectification").  ECF #7, Ex. 2.  By operation of Article 49(2) of the ICSID Convention, the Decision on Rectification is incorporated into the Award.  *See* Second Yanos Decl., Ex. 1.

A.      The ICSID Convention

The ICSID Convention is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017).  The Convention provides a framework for the resolution of investment disputes between a foreign state that is a member of the Convention and a national of another country that is a member of the Convention.  *See* Second Yanos Decl., Ex. 1.  To this end, the Convention created the International Centre for Settlement of Investment Disputes ("ICSID"), which administers arbitral proceedings under the ICSID Convention, including the arbitration at issue here.  *Id.*, Art. 1.

ICSID, however, is "not empowered to enforce awards."  *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-102-RDM, 2018 U.S. Dist. LEXIS 168518, *4 (D.D.C. Sept. 30, 2018).  Instead, the ICSID Convention obliges Contracting States to enforce ICSID awards as if they were final judgments of their respective national courts.  Article 54(1) of the Convention accordingly provides that:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state.  A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

The United States has been a party or "Contracting State" to the ICSID Convention since 1966.  *See* 17 U.S.T. 1270.  Congress has enacted legislation to implement the United States' Article 54 obligation to enforce ICSID awards as if they were final judgments of a court in one of the United States.  Specifically, 22 U.S.C. § 1650a(a) provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the Convention shall create a right arising under a treaty of the

2

> United States.  The pecuniary obligations imposed by such an
> award shall be enforced and ***shall be given the same full faith and
> credit as if the award were a final judgment of a court*** of general
> jurisdiction of one of the several States.  (Emphasis added).

Unlike other international arbitration awards, awards rendered under the ICSID

Convention are **not** subject to review under the Federal Arbitration Act, and do not require

confirmation in the manner prescribed by the Federal Arbitration Act.  This is established clearly

at 28 U.S.C. § 1650a, which states "[t]he Federal Arbitration Act (9 U.S.C. 1 *et seq*.) shall not

apply to enforcement of awards rendered pursuant to the [ICSID] Convention."  *See also Mobil*

*Cerro Negro, Ltd.*, 863 F.3d at 102 ("Member states' courts are . . . not permitted to examine an

ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction

to render the award; under the Convention's terms, they may do no more than examine the

judgment's authenticity and enforce the obligations imposed by the award."); *accord TECO*

*Guatemala Holdings, LLC*, No. 17-102-RDM, 2018 U.S. Dist. LEXIS 168518, at **4-5 ("A

member state is 'not permitted to examine . . . the ICSID tribunal's jurisdiction to render the

award;' all it may do is 'examine the judgment's authenticity and enforce the obligations

imposed by the award.'") (citing *Mobil Cerro Negro, Ltd.*, 863 F.3d at 102)).

Instead, and by design, review of ICSID awards is encapsulated within the framework of

the ICSID Convention itself.  ICSID Awards may be annulled or set aside *only* by specially-

constituted *ad hoc* committees appointed by the Chairman of the Administrative Council of

ICSID (*ex officio* the President of the World Bank) on specific grounds enumerated in the ICSID

Convention.  *See* Second Yanos Decl., Ex. 1, Arts. 52-53.

### B.   Venezuela's Consent To ICSID Arbitration

The ICSID Convention entered into force for Venezuela on June 1, 1995.  Second Yanos

Decl., Ex. 2, at 5.  Venezuela formally withdrew from the ICSID Convention on January 25,

2012, with effect from July 25, 2012.  Venezuela's withdrawal from the ICSID Convention has

no bearing on this case, however.  Under Article 72 of the ICSID Convention, a State's notice of

withdrawal "shall not affect the rights or obligations under th[e] Convention of that State . . .

arising out of consent to the jurisdiction of [ICSID] given . . . before such notice was received."

*Id.*, Ex. 1.  *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-1457

(TJK), 2018 U.S. Dist. LEXIS 211469, n. 3 (D.D.C. 2018) ("Although Venezuela denounced the

Convention on January 24, 2012, as permitted by Article 71, that denunciation did not affect the

rights or obligations under the Convention of Venezuela arising out of consent to the jurisdiction

of the Centre given by it before such notice was received [under] ICSID Convention Art.72")

(internal citations omitted)

Here, pursuant to Article 9 of the Agreement between the Swiss Confederation and the

Bolivarian Republic of Venezuela on the Reciprocal Promotion and Protection of Investments

dated November 18, 1993, which entered into force on November 30, 1994 ("the Treaty"),

Switzerland and Venezuela consented to submit disputes with one another's investors arising

under the Treaty to ICSID.[3]  The Koch Plaintiffs accepted Venezuela's offer to arbitrate disputes

arising under the Treaty through a notice of dispute transmitted to Venezuela on November 9,

2010.  ECF # 7, Ex. 1, ¶ 2.9.  Therefore, both parties consented to arbitrate this dispute before

Venezuela's denunciation of the ICSID Convention.

## C.    The Koch Plaintiffs Prevailed In ICSID Arbitration Against Venezuela

KOMSA owned 25% of the equity of FertiNitro, a venture operating two fertilizer plants

in José, Venezuela.  ECF # 7, Ex. 1, ¶ 5.1.  KNI had a long-term offtake agreement with

---

[3] https://investmentpolicyhubold.unctad.org/IIA/country/203/treaty/3006 (last accessed on April 16, 2019).

FertiNitro to purchase, at a discount, both ammonia and urea. *Id.*, ¶¶ 2.15, 5.82. On October 10, 2010, Venezuela's then-President, Hugo Chavez, executed an expropriation decree during his weekly television broadcast taking control and possession of FertiNitro. *Id.*, ¶ 2.32. As executed the following day, the decree provided for the nationalization and seizure of FertiNitro and all of its assets, which extended to seizing full and effective control over FertiNitro's future production and abrogating the offtake agreement with KNI. *Id.*, ¶¶ 5.4, 5.59. Venezuela failed to compensate either KOMSA or KNI for the expropriation of their investments. As Swiss nationals, the Plaintiffs were entitled to protection under the Treaty. *Id.*, ¶¶ 2.36 – 2.39.

Accordingly, on June 28, 2011, the Koch Plaintiffs filed a Request for Arbitration against Venezuela under the ICSID Convention. *See id.*, ¶ 5.73. The Koch Plaintiffs' request was registered as ICSID Case Number ARB/11/19 on July 19, 2011. Consistent with the ICSID Convention and Arbitration Rules, the arbitration took place before a three-member Tribunal of three eminent international lawyers: Marc Lalonde PC OC QC, a former Attorney-General of Canada, appointed by the Koch Plaintiffs; Florentino Feliciano, a former Associate Justice of the Philippine Supreme Court, appointed by Venezuela; and V.V. Veeder QC, a citizen of the United Kingdom and noted international arbitrator, jointly selected by the parties as President of the Tribunal. *See id.*, ¶¶ 1.14-1.32. Venezuela subsequently appointed Professor Zachary Douglas QC, a citizen of Australia, as its arbitrator after the death of Justice Feliciano in December of 2015. *See id.*, ¶ 1.84.

On October 30, 2017, the Tribunal issued the Award in the Koch Plaintiffs' favor. ECF # 7, Ex. 1. In the Award, the Tribunal unanimously found that Venezuela unlawfully expropriated KOMSA's interest in FertiNitro, and (by a majority) found that Venezuela unlawfully expropriated KNI's interest in the offtake agreement. *See id.*, ¶¶ 12.3-12.4.

The Tribunal ordered Venezuela to pay compensation as follows:

(i)     US$ 140.25 million as the principal amount of compensation to KOMSA;

(ii)    US$ 184.8 million as the principal amount of compensation to KNI;

(iii)   pre-award interest to the Koch Plaintiffs from October 11, 2010 (the date of
        expropriation) to October 30, 2017 (the date of the Award) calculated at the US$
        6-month Libor rate plus 2%, compounded every six months on the sums awarded;

(iv)    legal costs in the amount of US$ 17,436,085.10 and arbitration costs in the
        amount of US$ 628,836.435; and

(v)     post-award interest on all amounts awarded, including the total pre-award interest
        due on the principal sums of US$ 140,250,000 and US$ 184,800,000 from
        October 30, 2017 until payment, calculated at the US$ 6-month Libor rate plus
        2%, compounded every six months.

*See id.*, ¶¶ 12.3-12.8.

Under the Award, the amount of pre-award interest awarded to KOMSA amounts to US$ 28,419,011.14, for a total of US$ 168,669,011.14, and the amount of pre-award interest awarded to KNI amounts to US$ 33,778,603.62, for a total of US$ 200,478,603.62.

On December 18, 2017, the Acting Secretary-General of ICSID registered Venezuela's request for rectification of the Award pursuant to Article 49(2) of the Convention. Article 49(2) provides in relevant part that:

> The Tribunal upon the request of a party made within 45 days
> after the date on which the award was rendered . . . shall rectify
> any clerical, arithmetical or similar error in the award.

Venezuela argued there was an error in how the Tribunal calculated the amount of compensation awarded to KNI. According to Venezuela, this error meant that the amount awarded to KNI should be reduced US$ 18.1 million (before interest).

6

On April 11, 2018, the Tribunal issued a Decision on Rectification reducing the principle amount awarded to KNI as compensation by US$18,100,000 (from US$184,800,000 to US$166,700,000).  ECF # 7, Ex. 2, ¶ 74.  Pursuant to Article 49(2) of the ICSID Convention, the Decision on Rectification is incorporated into the Award.  Together, the October 30, 2017 Award and the Tribunal's April 11, 2018 Decision on Rectification, constitute the full and final Award in this case.  As of May 16, 2019, the total amount owed by Venezuela to the Koch Plaintiffs under the Award is US$ 413,520,095.17.  *See* Second Yanos Decl., Ex. 4.

On August 17, 2018, Venezuela applied for annulment of the Award pursuant to Article 52(5) of the ICSID Convention.  Under Rule 14(3)(e) of ICSID's Administrative and Financial Regulations, "the applicant [for annulment] shall be solely responsible for making the advance payments [to ICSID] . . . to cover expenses following the constitution of the [*ad hoc*] Committee."  Since first seeking annulment of the Award ten months ago, Venezuela has failed to make a single payment to cover ICSID's expenses and delaying the proceedings of the *ad hoc* committee.

Venezuela's annulment application nevertheless automatically triggered a provisional stay of enforcement of the Award.  An *ad hoc* committee appointed by the Secretary-General of ICSID to consider Venezuela's challenge to the Award pursuant to Article 52 of the ICSID Convention weighed the parties' submissions as to whether it should lift or continue that stay.  On April 1, 2019, the *ad hoc* committee lifted the stay of enforcement of the Award.  *See* Second Yanos Decl., Ex. 3.

The Award is now binding on Venezuela.  Pursuant to Article 53 of the ICSID Convention, Venezuela is obligated to "abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed" by an *ad hoc* committee constituted under

Article 52 of the ICSID Convention.  Nevertheless, Venezuela has still not paid any of the amounts it owes under the Award.

> **D.    The Koch Plaintiffs Bring This Proceeding To Enforce The Award Under 22 U.S.C. § 1650a And Article 54 Of The ICSID Convention**

On November 28, 2017, the Koch Plaintiffs filed this action to enforce the pecuniary obligations of the Award.  *See* ECF # 1.  The Complaint set forth a single count under 22 U.S.C. § 1650a.  *Id.* ¶¶ 25-30.

The Koch Plaintiffs thereafter served Venezuela with the Complaint pursuant to the Hague Service Convention, to which Venezuela is a party.  Specifically, on January 11, 2018, the Koch Plaintiffs couriered (*i*) a duly-executed and notarized USM-94 "Request for Service Abroad of Judicial or Extrajudicial Documents" in duplicate English and Spanish versions, together with duplicate English and Spanish copies of: (*ii*) the original Complaint in this action, (*iii*) two supporting exhibits, (*iv*) summons, (*v*) civil cover sheet, and (*vi*) notice of right to consent to trial before a magistrate judge to the Central Authority designated by Venezuela for international service of process pursuant to the Hague Service Convention.  First Yanos, Decl., Ex. 1.  Venezuela's "Central Authority" is the Office of Consular Relations of Venezuela's Ministry of the Popular Power for External Relations (*Ministerio del Poder Popular para Relaciones Exteriores*) (the "Foreign Ministry").[4]  Delivery to the Foreign Ministry was made on January 25, 2018 and signed for on that date by K. Ordones, an employee of the Foreign Ministry.  First Yanos Decl., Ex. 2.  Service on Venezuela was thus complete as of January 25, 2018 because the papers to be served arrived at their destination and Venezuela accepted service

---

[4] *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, opened for signature Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.  *See* First Yanos Decl., Ex. 3.

voluntarily.  *See* Hague Service Convention, Article 5 ("[T]he document may always be served by delivery to an addressee who accepts it voluntarily.").

Nevertheless, after the arbitral tribunal issued the Decision on Rectification in Venezuela's favor and reducing the principal amount of the award to KNI by US$18,100,000 (from US$184,800,000 to US$166,700,000), the Koch Plaintiffs filed an Amended Complaint to reflect the Tribunal's downward revision of the compensation owed to KNI by Venezuela on May 23, 2018 (ECF # 7).  No new causes of action or defendants were added to the Amended Complaint.  Subsequently, acting out of an abundance of caution, the Koch Plaintiffs decided to serve Venezuela through the Hague Service Convention for a second time.

Accordingly, on June 1, 2018, counsel for the Koch Plaintiffs couriered a duly executed and notarized USM-94 "Request for Service Abroad of Judicial or Extrajudicial Documents" in duplicate English and Spanish versions, together with duplicate English and Spanish copies of the Amended Complaint, three supporting exhibits, and a civil summons, to the Venezuelan Foreign Ministry.  First Yanos Decl., Ex. 4.  Delivery was made on June 13, 2018, and acknowledged in writing by a Foreign Ministry employee, Mr. Jose Vera.  First Yanos Decl., Ex. 5.  Service of the Koch Plaintiffs' Amended Complaint under the Hague Service Convention was once again complete upon receipt and acceptance by the Foreign Ministry.  *See* Hague Service Convention, Article 5 ("[T]he document may always be served by delivery to an addressee who accepts it voluntarily.").

## II.    THE COURT SHOULD ENFORCE THE AWARD UNDER 22 U.S.C. § 1650a

### A.    This Court Has Jurisdiction To Enforce The Final Award

This Court has subject matter jurisdiction pursuant to 22 U.S.C. § 1650a and 28 U.S.C. §§ 1330(a) and 1605.

Venezuela does not enjoy sovereign immunity in this case. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq*., provides, in relevant part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case:"

> brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards. *Id.*, § 1605(a)(1).
>
> [or] . . .
>
> in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver, *id.*, § 1605(a)(6);

Here, both exceptions to sovereign immunity apply to an action to recognize and enforce an ICSID arbitral award.

*First*, the Award was issued pursuant to a Treaty by which Venezuela agreed to arbitrate Treaty disputes with Swiss investors within the framework established by the ICSID Convention, an international Treaty that specifically calls for the recognition and enforcement of arbitration awards and which is in force for the United States. *See* Second Yanos Decl., Ex. 1, Art. 54; *Tidewater Inv. SRL*, 2018 U.S. Dist. LEXIS 211469, *10 ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FISA has concluded that they do") (quoting *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013)).[5] *Second*, by consenting to arbitrate—in both the Treaty and the Convention—Venezuela waived any immunity from sovereign immunity that it

---

[5] *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 U.S. Dist. LEXIS 211469, n. 3 (D.D.C. 2018) ("Although Venezuela denounced the Convention on January 24, 2012, as permitted by Article 71, that denunciation did not affect the rights or obligations under the Convention of Venezuela arising out of consent to the jurisdiction of the Centre given by it before such notice was received [under] ICSID Convention Art.72") (internal citations omitted)

might have otherwise enjoyed.  *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir.

2015) (Section 1605(a)(6) grants jurisdiction "to confirm an award made pursuant to an

arbitration agreement governed by an international treaty."); *Blue Ridge Invs., LLC*, 735 F.3d at

85 ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID

Convention fall within the arbitral award exception to the FSIA has concluded that they do.");

*Mobil Cerro Negro, Ltd.*, 863 F.3d at 104-05 ("The FSIA's immunity provisions do not shield a

foreign sovereign from federal courts' exercise of jurisdiction over a civil action to enforce an

ICSID award: the waiver and arbitration exceptions to immunity that are found in subsections

1605(a)(1) and (a)(6), respectively, apply, and allow such an action to proceed"); *Cont'l Cas. Co.

v. Argentine Republic*, 893 F.Supp.2d 747, 751 (E.D. Va. 2012) (noting that there is no doubt

that "ICSID arbitral awards fall within . . . immunity exception" under 28 U.S.C. §

1605(a)(6)(B)).

For each of these independently sufficient reasons, Venezuela is not immune from

jurisdiction of this Court under the FSIA.

### B.     Venezuela Was Properly Served In Accordance With The FSIA And Failed To Respond Within 60 Days

The Koch Plaintiffs properly served Venezuela with the Complaint in this case.

Under 28 U.S.C. § 1608, a plaintiff must take specific steps to effect service on a foreign-

state defendant.  As the D.C. Circuit explained in *Barot v. Embassy of the Republic of Zimbabwe*,

785 F.3d 26, 27 (D.C. Cir. 2015):

> The [FSIA] provides four methods of service in descending order
> of preference.  First, "by delivery of a copy of the summons and
> complaint in accordance with any special arrangement for service
> between the plaintiff and the foreign state or political subdivision."
> 28 U.S.C. § 1608 (a)(1).  Second, "by delivery of a copy of the
> summons and complaint in accordance with an applicable
> international convention on service of judicial documents."  *Id.* §
> 1608(a)(2).  Third, "by sending a copy of the summons and

11

> complaint and a notice of suit, together with a translation of each
> into the official language of the foreign state, by any form of mail
> required a signed receipt, to be addressed and dispatched by the
> clerk of the court to the head of the ministry of foreign affairs of
> the foreign state concerned . . . ." *Id.* § 1608(a)(3).  And fourth, if
> none of the first three methods works, a plaintiff can serve the
> appropriate documents through the Department of State."  *Id.* §
> 1608(a)(4).

The D.C. Circuit has also explained that, when acting within this statutory framework, a plaintiff

"must attempt service by the first method (or determine that it is unavailable) before proceeding

to the second method, and so on."  *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C.

Cir. 2012).  Though the plaintiff bears the burden of proving personal jurisdiction, "when the

plaintiff moves for default judgment against an absent defendant, only a prima facie showing is

required."  *Tidewater Inv. SRL*, No. 17-4157 (TJK), 2018 U.S. Dist. LEXIS 211469, *12 (citing

*Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)).

Here, service under 28 U.S.C § 1608(a)(1) was unavailable, because the Koch Plaintiffs

and Venezuela do not have any "special arrangement for service."  The Koch Plaintiffs thus

proceeded to serve Venezuela under 28 U.S.C. § 1608(a)(2) in accordance with the Hague

Service Convention.

Specifically, service under the Hague Service Convention was effected on January 25,

2018 when a duly-executed and notarized USN-94 "Request for Service Abroad of Judicial or

Extrajudicial Documents" in duplicate English and Spanish versions, together with duplicate

English and Spanish copies of the original complaint in this action, two supporting exhibits,

summons, civil cover sheet, and notice of right to consent to trial before a magistrate judge,

couriered by the Koch Plaintiffs was delivered to the Venezuelan Foreign Ministry and signed

for on that date by K. Ordones, an employee of the Foreign Ministry.[6]  First Yanos Decl., Exs. 1, 2.

In these circumstances, delivery to and acceptance by the Venezuelan Foreign Ministry completed service of the Complaint because Venezuela was *itself* the party to be served and no further action by the Venezuelan Foreign Ministry was required to complete service.  *See* First Yanos Decl., Ex. 3.  Importantly, effective service in this case did not depend on Venezuela's Central Authority's subsequent delivery of the summons and complaint to a third-party located in Venezuela, as it might if the defendant were a Venezuelan individual or corporation distinct from the government of Venezuela itself.  As a result, and as another federal district court has explained, "[s]ervice was effectuated on Venezuela, through its Central Authority under the Hague Convention . . . when it received the Summons, Complaint and transmittal documents." *Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755, *3 (S.D. Fla. Apr. 24, 2014).

It follows that there was correspondingly no need for the Foreign Ministry to issue a certificate confirming that it had succeeded in serving process on itself.  *See Box v. Dallas*

---

[6] After the arbitral tribunal issued a decision reducing the principal amount awarded to KNI as compensation, the Koch Plaintiffs filed an amended complaint to update the total amount of compensation sought from Venezuela.  Because the Koch Plaintiffs' amendment of their Complaint only reflected the Tribunal's downward revision of the amount of compensation awarded in response to Venezuela's application for rectification, and did not add new causes of action or defendants, the Koch Plaintiffs were not required to serve the Amended Complaint on Venezuela.  *See Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 27-28 (D.D.C. 2009) (Where the "amended complaint did not substantially change the allegations in the original complaint and did not add new defendants . . . [and] the causes of action are essentially the same, but . . . now available under another source of law," the court "will not require the plaintiff to serve the amended complaint"); *Dammarell v. Islamic Republic of Iran*, 370 F.Supp.2d 218 (D.D.C. 2005) ( ". . . section 1608 is concerned with the service of the initial complaint that commences a lawsuit, and not with ensuing pleadings or papers").  The Koch Plaintiffs nevertheless served the Amended Complaint on Venezuela under the Hague Service Convention out of an abundance of caution.  The delivery was signed for by a Foreign Ministry employee, Mr. Jose Vera on June 13, 2018.  First Yanos Decl. Ex. 5.

*Mexican Consulate Generate*, 487 Fed. Appx. 880, 886 (5th Cir. Aug. 21, 2012) (a certificate is "more important" when service is on a third party in the foreign country, rather than on the Central authority "itself") (citing *Burda Media, Inc. v. Viertel*, 317 F.3d 292, 301 (2nd Cir. 2005) (service under the Hague Service Convention is "properly perfected . . . notwithstanding the failure of the Central Authority to return a Certificate" when the plaintiff attempts in good faith to comply with the requirements of the Convention and the defendant has sufficient notice that "no injustice would result")).  *See also Devengochea*, No. 12-CV-23743, 2014 U.S. Dist. LEXIS 188755, *3 ("Since Venezuela was properly served with process pursuant to the Hague Convention and Venezuela had failed to respond or file any response pursuant to Article 15 of the Hague Convention, a Clerk's Default was entered in favor of Devengoecha and against Venezuela").[7]

### C.  Venezuela Failed To Answer Within 60 Days Of Service

Venezuela is in default because it failed to submit a timely answer or other responsive pleading to either of the Koch Plaintiffs' complaints.  Pursuant to the FSIA, 28 U.S.C. § 1608(d), a foreign sovereign "shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section."  Venezuela did not respond within 60 days of its acceptance of the Koch Plaintiffs' Complaint (*i.e.*, by March 26, 2018).  To date, Venezuela has made no response to the Complaint for nearly thirteen months.[8]

---

[7] This is a sensible rule.  Otherwise, sovereign defendants could easily evade service under the Hague Service Convention by the simple expedient of declining to certify that they had formally served themselves.  Such a result would be incompatible with the Hague Service Convention, Article 5 of which provides that a "document may always be served by delivery to an addressee who accepts it voluntarily," as well as with the FSIA itself, which makes foreign sovereigns subject to service "in accordance with an applicable international convention on service of judicial documents."  *See* 28 U.S.C. § 1608(a)(2).

[8] Counting from Venezuela's acceptance of the Koch Plaintiffs' strictly unnecessary Amended Complaint on June 13, 2018, *see* First Yanos Decl. Ex. 5, Venezuela has been in default since August 13, 2018 *at the latest*.

This Court may therefore enter a default judgment against Venezuela. *See, e.g., Sealift Bulkers, Inc. v. Republic of Armenia*, 965 F. Supp. 81, 84 (D.D.C. 1997) ("Under the Foreign Sovereign Immunities Act, if a claimant has properly served a foreign sovereign defendant and the foreign sovereign has failed to respond within sixty days of service, the Court may enter default judgment . . . .").

### D. The Koch Plaintiffs Have Established Their Claim For Relief

Under the FSIA, "[a] judgment by default shall be entered by a court of the United States . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(3). The plaintiff "must present a legally sufficient prima facie case, *i.e.*, 'a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.'" *Gates v. Syrian Arab Republic*, 580 F.Supp. 2d 53, 63 (D.D.C. 2008). "Although a court receives evidence from only the plaintiff when a defendant has defaulted, 28 U.S.C. § 1608(e) does not require a court to demand more or different evidence than it would ordinarily receive in order to render a decision." *Id.* In evaluating "the plaintiff's proofs, a court may 'accept as true the plaintiffs' uncontroverted evidence.'" *Id.*; *see also Beer v. Islamic Republic of Iran*, 574 F.Supp. 2d 1, 9 (D.D.C. 2008) ("This Court accepts the uncontested evidence and sworn testimony submitted by plaintiffs as true in light of defendants' failure to object or enter an appearance to contest the matters in this case.").

The inquiry required by 28 U.S.C. § 1608(3) is straightforward in light of 22 U.S.C. § 1650a. As a matter of law, the "award of an arbitral tribunal rendered pursuant to [the ICSID Convention] ***shall*** create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award ***shall*** be enforced and ***shall be given the same full faith***

---

15

***and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States***." 22 U.S.C. § 1650a (emphases added).  In other words, the "language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [petitioner's] entitlement to any unpaid claims under the award." *Tidewater Inv. SRL*, 2018 U.S. Dist. LEXIS 211469, *16 (citing *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp.2d 131, 132-33 (D.D.C. 2012) (noting that the court is "***required by statute*** to give [an ICSID award] full faith and credit and confirm it accordingly")) (emphasis added).

Here, the Koch Plaintiffs have submitted to the Court true and correct copies of the Award, which have been certified as authentic by ICSID and together constitute the Final Award. ECF # 7, Exs. 1-2.  Accordingly, the Koch Plaintiffs have established their entitlement to relief under 22 U.S.C. § 1650a.  The Court should therefore enforce the pecuniary obligations of the Award and give the Award the same full faith and credit as a final judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter judgment for the Koch Plaintiffs against Venezuela.  A proposed form of judgment is submitted herewith.

Dated: May 16, 2019
New York, New York

Respectfully submitted,

_____
Alex Yanos (Bar No. NY0219)
Carlos Ramos-Mrosovsky (Bar No. 986363)
Rajat Rana (Bar No. 1032596)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel:    212-210-9400
Fax:    212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Koch Minerals Sàrl and Koch
Nitrogen International Sàrl*