**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KOCH MINERALS SÀRL,
KOCH NITROGEN INTERNATIONAL SÀRL,

          *Plaintiffs*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

          *Defendant*.

Case No. 17-cv-02559-KBJ

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT
BOLIVARIAN REPUBLIC OF VENEZUELA'S MOTION TO SET ASIDE
THE CLERK'S ENTRY OF DEFAULT AND TO DISMISS THE
<u>COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro
(D.C. Bar No. 468922)
Kevin A. Meehan
(D.C. Bar No. 1613059)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
Email: jpizzurro@curtis.com
Email: kmeehan@curtis.com

*Attorneys for Defendant
Bolivarian Republic of Venezuela*

Dated: Washington, D.C.
       December 20, 2019

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.  The Venezuelan Sanctions Regulations Prohibit Koch from Enforcing Its Arbitral Award against the Republic ...................................................................................................2

II. The Delaware Proceedings Have Been Stayed and Koch Has No License to Seek an Attachment in Delaware ........................................................................................................6

    A.  Dismissal Will Not Result in Prejudicial Delay Because the Delaware Proceedings Are Stayed and Koch Has No OFAC License .............................................6

    B.  This Court Should Not Adopt the Delaware Court's Unsupported Conclusion that Delivery of a Request for Service on the Central Authority Constitutes Service on the State Itself ........................................................................................8

CONCLUSION ................................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Cavic v. Republic of Serbia*,
  No. 16-cv-1910-JLS-KESx, 2018 WL 6038346 (C.D. Cal. Mar. 21, 2018) ............................ 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ....................................................................................... 6

*Crystallex Int'l Corp. v. PDV Holding*,
  2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019) ................................................. 6, 7, 8

*Dagen v. Cfc Group Holdings*,
  No. 00 Civ. 5682 (DAB)(THK), 2002 U.S. Dist. LEXIS 25767
  (S.D.N.Y. Mar. 7, 2002) ....................................................................................................... 10

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ................................................................................................................ 5

*Dean Witter Reynolds, Inc. v. Fernandez*,
  741 F.2d 355 (11th Cir. 1984) ................................................................................................ 5

*Marschhauser v. Travelers Indem. Co.*,
  145 F.R.D. 605 (S.D. Fla. 1992) ............................................................................................. 9

*Mezerhane v. República Bolivariana de Venezuela*,
  No. 11-23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802
  (S.D. Fla. Mar. 19, 2013), *aff'd*, 785 F.3d 545 (11th Cir. 2015) ............................................ 9

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela,*
  Civ. No. 17-1457(TJK), 2018 U.S. Dist. LEXIS 211469
  (D.D.C. Dec. 17, 2018) ........................................................................................................... 9

*United States ex. Rel. Walterspiel v. Bayer AG*,
  639 Fed. App'x. 164 (4th Cir. 2016) .................................................................................... 10

*Water Splash Inc. v. Menon*,
  137 S. Ct. 1504 (2017) ..................................................................................................... 9, 10

*Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*,
  No. 13-cv-00848-JCS, 2014 U.S. Dist. LEXIS 148665
  (N.D. Cal. Jan. 21, 2014) ...................................................................................................... 10

*Zhang v. Baidu.com Inc.*,
  932 F. Supp. 2d 561 (S.D.N.Y. 2013) .................................................................................... 9

**Statutes**

50 U.S.C. § 1702 ............................................................................................................................ 2

50 U.S.C. § 1704 ............................................................................................................................ 3

**Treaties**

Convention on the Service Abroad of Judicial and Extrajudicial Documents
 in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361,
 658 U.N.T.S. 163 (entered into force Feb. 10, 1969) ................................................................ 9

**Executive Orders & Federal Regulations**

31 C.F.R. § 515.310 ...................................................................................................................... 5
31 C.F.R. § 591.201 ...................................................................................................................... 3
31 C.F.R. § 591.202 ................................................................................................................... 5, 6
31 C.F.R. § 591.310 ...................................................................................................................... 5
31 C.F.R. § 591.407 ........................................................................................................... 1, 4, 6, 7
31 C.F.R. § 591.506 ...................................................................................................................... 4
Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015) ........................................................ 3
Exec. Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018) ....................................................... 3
Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019) ........................................................ 3

Pursuant to the Court's request at oral argument on December 10, 2019,[1] the Republic submits this supplemental memorandum in support of its motion to dismiss this action for lack of personal jurisdiction and insufficient service of process under the FSIA and to set aside the clerk's entry of default.[2]

## PRELIMINARY STATEMENT

On December 10, 2019, this Court asked the parties to address two issues raised for the first time on oral argument: (1) the significance of recent amendments to the Venezuelan sanctions regulations issued by the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC") and (2) the status and relevance of proceedings commenced by the Republic's other creditors in the United States District Court for the District of Delaware (the "Delaware Court").

The recent amendments to the Venezuelan sanctions regulations expressly prohibit "the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property" of the Republic or the Venezuelan national oil company, Petróleos de Venezuela, S.A. ("PDVSA"), without a specific license from OFAC. 31 C.F.R. § 591.407. Nearly identical sanctions regulations have been construed to prohibit the entry of judgment unless or until the plaintiff obtains a license from OFAC, and guidance recently issued by OFAC expressly states that the regulations prohibit the attachment of any property or interests in property of the Republic or PDVSA without a license.

---

[1] Acronyms and abbreviations not otherwise defined herein have the same meanings attributed to them in the Republic's opening brief.

[2] It is the Republic's understanding that the Magistrate Judge will be issuing a report and recommendation pursuant to Local Civil Rule 72.3 and not a judgment pursuant to Local Civil Rule 73.1 because "[a] magistrate judgment may exercise this authority [under Local Civil Rule 73.1] only if all parties voluntarily consent." Dkt. Nos. 27 and 28. The Republic has explicitly stated that it did not consent to referral of the case to the Magistrate Judge and that the pending motions should be decided by the District Judge. Dkt. No. 34, p. 2 (Aug. 27, 2019).

Here, Koch is moving for entry of default judgment on its arbitral award and claims that this Court should do so expeditiously so that Koch can attach PDVSA's shares of PDV Holding, Inc. ("PDVH") in Delaware.  However, Koch does not purport to have not applied for, much less obtained, a license from OFAC authorizing them to enforce their award or to obtain an attachment.  Unless and until Koch obtains such a specific license from OFAC, they cannot seek entry of a judgment on their arbitral award or obtain an attachment of any property of the Republic or PDVSA in Delaware or anywhere else in the United States.

Koch asserted during oral argument that any delay caused by requiring them to serve the Republic in strict compliance with the requirements set forth in the FSIA could be prejudicial because it might prevent them from participating in proceedings before the Delaware Court in which other creditors are seeking to attach and execute upon PDVSA's shares of PDVH. However, the Delaware Court has entered an order, dated December 12, 2019, staying several cases in which various creditors are seeking to the attach and execute upon PDVSA's shares of PDVH.  Thus, Koch can suffer no prejudice because, first, it cannot obtain an attachment of the PDVH shares without a license from OFAC, and, second, all proceedings in Delaware of purported creditors of the Republic have been stayed.

## ARGUMENT

**I.    The Venezuelan Sanctions Regulations Prohibit Koch
       from Enforcing Its Arbitral Award against the Republic**

The International Emergency Economic Powers Act ("IEEPA") authorizes the President, upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any acquisition … use, transfer … or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(B).  In 2015, President Barrack Obama

exercised his authority under IEEPA to declare a national emergency with respect to the ongoing crisis in Venezuela. Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015) ("E.O. 13692"). Thereafter, President Donald J. Trump has exercised his authority under IEEPA to take additional steps to address the national emergency declared in E.O. 13692 by issuing several additional Executive Orders.

In particular, on August 5, 2019, the President issued Executive Order 13884 ("E.O. 13884"), which states that all property and interests in property of the Republic that are in the United States or that come into the possession or control of a U.S. person "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019), § 1(a). The President also issued Executive Order 13850 ("E.O. 13884"), which blocked the assets of Specially Designated Nationals ("SDN"), such as PDVSA,[3] and prohibits transactions in blocked property without a license. Exec. Order No. 13850 §§ 1(a), 4(b), 83 Fed. Reg. 55,243 (Nov. 1, 2018). These Executive Orders further direct the Treasury Secretary to issue regulations and take other actions necessary to implement those orders. *See id.* § 8; E.O. 13884, § 8; *see also* 50 U.S.C. § 1704.

On November 22, 2019, OFAC significantly amended the Venezuelan sanctions regulations to specify that those regulations implement all of the executive orders issued in connection with the national emergency declared in E.O. 13692, including E.O. 13884 and E.O. 13850. 31 C.F.R. § 591.201. The amendments also include a new regulation, which states:

---

[3] OFAC designated PDVSA as an SDN on January 28, 2019. *See* U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850, dated Jan. 28, 2019, *available at* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/vz_sector_determination_oil_20190128.pdf (last visited Dec. 4, 2019). Treasury Secretary Mnuchin explained that PDVSA was designated as an SDN in order "to support Interim President Juan Guaidó, the National Assembly, and the Venezuelan people's efforts to restore their democracy," and to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela." U.S. Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petróleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.

> Notwithstanding the existence of any general license issued under this part, or issued under any Executive order issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or **the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process** purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c),[4] **is prohibited** unless authorized pursuant to a specific license issued by OFAC pursuant to this part.

31 C.F.R. § 591.407 (emphasis added). On December 9, 2019, OFAC issued guidance in the form of Frequently Asked Questions ("FAQs"), which state that, under the new regulations, "a specific license from OFAC would be required for measures such as … Levying Upon, **Attaching**, [or] Encumbering" any property of the Republic or PDVSA. U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ No. 808 (Dec. 9, 2019), *available at* https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx#808 ("OFAC FAQ 808") (emphasis added).

The amended Venezuelan sanctions regulations also prohibit creditors of the Republic from obtaining judgments on their awards without a specific license. Section 591.407 prohibits "the enforcement of any … arbitral award … through judicial process purporting to *transfer*" interests in blocked property absent a specific license from OFAC. 31 C.F.R. § 591.407 (emphasis added). The Venezuela sanctions regulations explicitly define a "transfer" of interests in blocked property to include "*the issuance, docketing, or filing of*, or levy of or under, *any judgment*, decree, *attachment*, injunction, execution, or other judicial or administrative process or

---

[4] Section 591.506(c) of the Venezuelan sanctions regulations states:

> Entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201 is prohibited unless licensed pursuant to this part.

31 C.F.R. § 591.506(c).

- 4 -

order, or the service of any garnishment." 31 C.F.R. § 591.310 (emphasis added). In *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (11th Cir. 1984), the Eleventh Circuit construed nearly identical language in the Cuban sanctions regulations that prohibited "the issuance, docketing, filing, or the levy of or under any judgment, decree, attachment, execution, or other judicial or administrative process or order" in the absence of a license. *Id.* at 357 (quoting 31 C.F.R. § 515.310). It held that, although a license was not required to initiate the action, the "[e]ntry of judgment triggered the application of the Regulations" and therefore "a district court should not enter judgment" before the plaintiff obtains a license. *Id.* at 362-63. In other words, while the OFAC regulations may permit a plaintiff to commence an action to litigate liability, the plaintiff must obtain a license before a judgment can be entered in its favor.[5]

The Venezuelan sanctions regulations further state that "**any attachment**, **judgment**, decree, lien, execution, garnishment, or other judicial process is **null and void** with respect to any property and interests in property blocked pursuant to § 591.201." 31 C.F.R. § 591.202(e) (emphasis added). The Supreme Court upheld similar regulations under the Iran sanctions program in *Dames & Moore v. Regan*, 453 U.S. 654, 673-75 (1981).

Here, Koch is seeking entry of a default judgment on its arbitral award against the Republic. *See* Pls. Mot., Dkt. No. 25 at p. 16 ("The Court should therefore enforce the pecuniary obligations of the Award … and enter judgment for the Koch Plaintiffs against Venezuela."). However, Koch does not purport to have even applied for, much less obtained, a specific license from OFAC. Absent such a specific license, Koch cannot obtain a judgment on their arbitral award. *See Dean Witter*, 741 F.2d at 362-63. And any judgment obtained by Koch without a license would be a nullity. *See* 31 C.F.R. § 591.202(e). Thus, even if the Court were inclined to

---

[5] To be sure, OFAC has explained that the amended regulations do not, ordinarily, prohibit a creditor from initiating a lawsuit. *See* OFAC FAQ 808.

deny the Republic's motion to dismiss for improper service of process and lack of personal jurisdiction under the FSIA, Koch's motion for a default judgment cannot be granted unless and until Koch obtains a specific license from OFAC.

## II. The Delaware Proceedings Have Been Stayed and Koch Has No License to Seek an Attachment in Delaware

### A. Dismissal Will Not Result in Prejudicial Delay Because the Delaware Proceedings Are Stayed and Koch Has No OFAC License

During oral argument, Koch's counsel asserted that any further delay in entering judgment in the present case could prejudicially delay Koch's plans to obtain an attachment of the PDVH shares and participate in an execution sale of those shares along with other creditors in proceedings pending in the Delaware.  Oral Arg. Tr. 27:21-28:11 (Dec. 10, 2019).  Plaintiff is referring, primarily, to proceedings initiated by Crystallex International Corp. ("Crystallex") in 2017 in which Crystallex sought an attachment of PDVSA's shares of PDVH to satisfy its judgment against the Republic on the theory that PDVSA was the alter ego of the Republic. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-00151-LPS, Dkt. No. 2 (D. Del. Aug. 14, 2017).  In August 2018, well before the recent changes to the Venezuelan sanctions program, the Delaware Court granted Crystallex's attachment motion, finding that the regime of former President Nicolás Maduro extensively controlled PDVSA.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela ("Crystallex I")*, 333 F. Supp. 3d 380 (D. Del. 2018).  However, the Delaware Court has now stayed all of the proceedings in which the Republic's creditors are seeking to attach and execute on the PDVH shares.  *Crystallex Int'l Corp. v. PDV Holding ("Crystallex II")*, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019).  Moreover, in light of the recent amendments to the Venezuelan sanctions regulations, creditors, such as Koch, now need to obtain a license from OFAC before they can attach PDVSA's shares of PDVH.  31 C.F.R. §§ 591.201, 591.407; OFAC FAQ 808.

On December 12, 2019, the Delaware Court stayed the proceedings in the *Crystallex* case and all other cases filed by other creditors of the Republic in that court.[6] *Crystallex II,* 2019 U.S. Dist. LEXIS 214167, at *7. The Delaware Court explained that a stay of the proceedings was warranted for a number of reasons, including (a) the recent amendments to the Venezuelan sanctions regulations; (b) Crystallex's failure to obtain a license from OFAC; and (c) the U.S. recognition of the Guaidó administration as the government of Venezuela. *Id.* at *9-10. As a result of the stay, there cannot be an execution sale of the PDVH shares and the creditors in the other actions cannot obtain writs of attachment of the PDVH shares. Thus, Koch's claims of prejudicial delay in this case are moot.

Moreover, the Delaware Court itself acknowledged that circumstances have significantly changed since it granted Crystallex's attachment motion in August 2018. *Id.* at *20. In particular, the Venezuelan sanctions program has changed dramatically. Following the issuance of the attachment order in *Crystallex I*, the Republic and PDVSA were both designated under the Venezuelan sanctions program and their assets were blocked. Thereafter, the Venezuelan sanctions regulations were amended to explicitly prohibit any attachment of blocked property, including the PDVH shares, absent a specific license from OFAC. *See* 31 C.F.R. § 591.407; OFAC FAQ 808. As a result, creditors of the Republic, such as Koch, must now obtain a

---

[6] The Delaware Court's December 12 order addressed the following cases initiated by purported creditors of the Republic: *Crystallex Int'l Corp. v. PDV Holding, Inc.*, C.A. No. 15-cv-1082-LPS (D. Del.); *ConocoPhillips Petrozuata B.V., et al., v. Petróleos de Venezuela, S.A., et al.*, C.A. No. 16-cv-904-LPS (D. Del.); *Crystallex Int'l Corp. v. PDV Holding, Inc.*, C.A. No. 16-cv-1007-LPS (D. Del.); *ConocoPhillips Petrozuata B.V., et al., v. Petróleos de Venezuela, S.A., et al.*, C.A. No. 17-cv-28-LPS (D. Del.); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-mc-00151-LPS (D. Del.); *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela, et al.*, C.A. No. 18-cv-1963-LPS (D. Del.); *OI European Group B.V. v. Bolivarian Republic of Venezuela, et al.*, C.A. No. 19-cv-290-LPS (D. Del.). Another case initiated by purported creditors of the Republic before the Delaware Court has been stayed pursuant to the parties' stipulation. *See Tidewater Investment SRL, et al., v. Bolivarian Republic of Venezuela*, C.A. No. 19-mc-79-LPS, [Dkt. No. 11] (D. Del.). Another case initiated by purported creditors of PDVSA is pending before the Delaware Court and has not been stayed. *Phillips Petroleum Company Venezuela Ltd., et al., v. Petróleos de Venezuela, S.A., et al.*, C.A. No. 19-mc-342-LPS (D. Del.). While the parties have stipulated to a briefing schedule on the plaintiffs' motion for an attachment of the PDVH shares and the defendants' motion to dismiss, it is unlikely that the Delaware Court will move forward with this particular action having stayed all of the other creditors' actions.

specific license from OFAC before they can seek an attachment of the PDVH shares. Koch does not purport to have even applied for, much less obtained, a license from OFAC and therefore cannot seek any attachment of the PDVH shares unless and until they obtain such a license.

**B.     This Court Should Not Adopt the Delaware Court's Unsupported Conclusion that Delivery of a Request for Service on the Central Authority Constitutes Service on the State Itself**

In its December 12 Order, the Delaware Court addressed, among other issues, the Republic's and PDVSA's motions to dismiss an action commenced by Saint Gobain Performance Plastics Europe ("Saint Gobain") for improper service of process and lack of personal jurisdiction under the FSIA. *See* 2019 U.S. Dist. LEXIS 214167, at *29-31. Saint Gobain argued that both the Republic and PDVSA were served under the Hague Convention when the Venezuelan Central Authority received the request for service on the theory that the Central Authority is part of the Venezuelan government. *See Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela, et al.,* C.A. No. 18-cv-1963-LPS, Dkt. No. 21 at pp. 4-5 (D. Del. Aug. 14, 2019). The Delaware Court granted PDVSA's motion to dismiss,[7] but denied the Republic's motion to dismiss. *See* 2019 U.S. Dist. LEXIS 214167, at *29-31. The Delaware Court concluded, without any analysis or citation to supporting authority, that the Republic was served under the Hague Convention when a courier delivered the request for service to the Venezuelan Central Authority. *Id.* at *29-30.[8]

The Delaware Court's conclusion that a foreign state can be served by delivering a request for service on the state's central authority is wrong as a matter of law and should not be adopted by this Court. Nothing in the Hague Convention even suggests that delivery of a request

---

[7] Saint Gobain admitted that it had not even attempted to serve PDVSA separately from the Republic itself. *See* 2019 U.S. Dist. LEXIS 214167, at *31.

[8] The Delaware Court nevertheless vacated the clerk's entry of default, denied Saint Gobain's motion for a default judgment and transferred the case to this Court on the grounds that venue was improper under the FSIA. *See* 2019 U.S. Dist. LEXIS 214167, at *25.

for service on the central authority constitutes service on the state itself. Rather, the Hague Convention provides for parties to deliver a request for service upon the central authority, which then serves the documents on the defendant in accordance with the methods of service prescribed by the receiving state's internal laws. *See* Hague Convention, arts. 2, 5; *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).

Thus, receipt of the request for service by the central authority does not constitute service on the state itself.[9] To complete service on the state, the central authority must arrange to have the documents served on the appropriate government agency in accordance with that state's internal procedures. *See Tidewater Inv. SRL v. Bolivarian Republic of Venezuela,* Civ. No. 17-1457(TJK), 2018 U.S. Dist. LEXIS 211469, at *7 (D.D.C. Dec. 17, 2018); *Cavic v. Republic of Serbia*, No. 16-cv-1910-JLS-KESx, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018); *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013); *Mezerhane v. República Bolivariana de Venezuela*, No. 11-23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802, at *4-5, *10 (S.D. Fla. Mar. 19, 2013), *aff'd*, 785 F.3d 545 (11th Cir. 2015); *Marschhauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 610 (S.D. Fla. 1992). The Delaware Court does not address this overwhelming authority or cite any to the contrary.

Accepting the Delaware Court's reasoning would effectively permit foreign states to be served by mail – a result directly at odds with the Supreme Court's holding in *Water Splash Inc. v. Menon*, 137 S. Ct. 1504 (2017), that service by mail is not permitted where the foreign state objected to service by "postal channels" under the Hague Convention. *Id.* at 1513. Here, the Republic objected to service by postal channels under the Hague Convention, which includes the use of private mail couriers such as FedEx. *See United States ex. Rel. Walterspiel v. Bayer AG*,

---

[9] The Hague Convention expressly provides that the central authority can refuse a request for service, including on sovereignty grounds, which confirms that service on the state is not complete the moment the request for service is received by the central authority. *See* Hague Convention, arts. 4, 6 and 13.

639 Fed. App'x. 164 (4th Cir. 2016); *see also Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 13-cv-00848-JCS, 2014 U.S. Dist. LEXIS 148665, at *11 (N.D. Cal. Jan. 21, 2014) ("private couriers, such as FedEx, come within the meaning of 'postal channels' under the Hague Convention"); *Dagen v. Cfc Group Holdings*, No. 00 Civ. 5682 (DAB)(THK), 2002 U.S. Dist. LEXIS 25767, at *47 (S.D.N.Y. Mar. 7, 2002) ("The distinction between service through 'postal channels' and Federal Express is not meaningful[.]").  Thus, Koch's argument that the Republic was served when FedEx delivered the summons and complaint to the Central Authority cannot be squared with the Supreme Court's decision in *Water Splash* given the Republic's objection to service by postal channels.[10]

---

[10] While the Delaware Court refers to Article 15, that provision does not provide a method for effecting service of process.  Rather, it permits the entry of judgment in certain circumstances where "the document was actually delivered to the defendant" pursuant to a "method provided for by this Convention."  Hague Convention, art. 15[1](b).  As explained above, Koch did not serve the Republic in accordance with any available method provided in the Hague Convention.  Moreover, Koch never even attempted to serve the only Venezuelan authority with standing to act on behalf of the Republic in U.S. courts: the Guaidó government.  *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019).

## **CONCLUSION**

This Court should vacate the clerk's entry of default and dismiss this case for improper service of process and lack of personal jurisdiction under the FSIA.

                                          Respectfully submitted,

Dated:     Washington, D.C.                   CURTIS, MALLET-PREVOST,
              December 20, 2019                COLT & MOSLE LLP

                                                    By:  */s/ Joseph D. Pizzurro*
                                                    Joseph D. Pizzurro
                                                    (D.C. Bar No. 468922)
                                                    Kevin A. Meehan
                                                    (D.C. Bar No. 1613059)
                                                    1717 Pennsylvania Avenue, N.W.
                                                    Washington, D.C. 20006
                                                    Tel.: (202) 452-7373
                                                    Fax: (202) 452-7333
                                                    Email: jpizzurro@curtis.com
                                                    Email: kmeehan@curtis.com

                                                    *Attorneys for Defendant*
                                                    *Bolivarian Republic of Venezuela*