## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KOCH MINERALS SÀRL
Chemin Des Primeveres 45
Fribourg, 1700
Switzerland

KOCH NITROGEN INTERNATIONAL SÀRL
Chemin de Primeveres 45
Case Postale 592
Fribourg, 1701
Switzerland,

        *Plaintiffs*,

        *v.*

BOLIVARIAN REPUBLIC OF VENEZUELA;
Ministerio del Poder Popular para Relaciones
Exteriores
Oficina de Relaciones Consulares
Avenida Urdaneta
Esquina Carmelitas a Puente Llaguno
Piso 1 del Edificio Anexo a la Torre MRE
Caracas, 1010
República Bolivariana de Venezuela,

        *Defendant*.

Civil Action No: 17-cv-02559-DAR

## KOCH MINERALS SÀRL AND KOCH NITROGEN INTERNATIONAL SÀRL'S SUPPLEMENTAL MEMORANDUM PURSUANT TO THE COURT'S DECEMBER 10, 2019 ORDER

## TABLE OF CONTENTS

I.     THE DECEMBER 9, 2019 VENEZUELA SANCTIONS "FAQS" ARE
       IRRELEVANT TO THIS RECOGNITION AND ENFORCEMENT
       PROCEEDING BEFORE THE COURT.......................................................................... 1

II.    PREJUDICE TO THE KOCH PARTIES IF THIS COURT WERE TO SET
       ASIDE VENEZUELA'S DEFAULT ............................................................................... 3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Conocophillips Petrozuata B.V. et al. v. Petroleos de Venezuela S.A. et al.*,
    No. 16-cv-904 (D.Del.) .................................................................................................3

*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
    No. 17-mc-151 (D.Del. Dec. 12, 2019) ........................................................................3

*Crystallex International Corp. v. PDV Holding Inc.*,
    No. 15-cv-1082-LPS (D.Del.) .......................................................................................3

*OI European Group B.V. v. Bolivarian Republic of Venezuela et al.*,
    No. 19-cv-290-LPS (D.Del.) ........................................................................................3

*Saint-Gobain Performance Plastics Europe v. Venezuela et al.*,
    No. 18-cv-1963-LPS (D. Del. Dec. 12, 2019) ...........................................................4, 5

**Statutes**

22 U.S.C. § 1650a ...........................................................................................................2, 4

The Koch Parties respectfully submit this Supplemental Memorandum pursuant to the Court's December 10, 2019 order instructing the Parties to address: (*i*) the purported impact of two Venezuela sanctions "FAQs" published on December 9, 2019 by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"); and (*ii*) the Koch Parties' ability to attach Venezuela's assets in the District of Delaware in satisfaction of their debts if this Court were to set aside the default.[1]

## I.   THE DECEMBER 9, 2019 VENEZUELA SANCTIONS "FAQS" ARE IRRELEVANT TO THIS RECOGNITION AND ENFORCEMENT PROCEEDING BEFORE THE COURT

On December 9, 2019, OFAC published two new FAQs, 808 and 809.  Fifth Yanos Decl., Exhibit 1.[2]  Both FAQs are irrelevant to this proceeding before the Court.  In particular, FAQ 808 provides:

> **808. Do I need a specific license from OFAC to file a suit in U.S. court against a person designated or blocked pursuant to Venezuela-related sanctions? Does a U.S. court, or its personnel, need a specific license from OFAC to hear such a case?**
>
> No. A specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program, or for a U.S. court, or its personnel, to hear such a case. However, a specific license from OFAC is required for the entry into a settlement agreement or the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591). This includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property. While terminology may vary in different jurisdictions and proceedings, a specific license from OFAC would be required for measures such as:

---

[1] Unless otherwise defined, acronyms and abbreviations shall have the same meaning attributed to them in the Koch Parties' Response to Defendant Bolivarian Republic of Venezuela's Motion to Set Aside the Clerk's Entry of Default and to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF # 32).

[2] In this brief, "Fifth Yanos Decl." refers to the Declaration of Alexander A. Yanos, dated Dec. 20, 2019, attached to this Supplemental Memorandum.

- Taking Possession (Actual or Constructive)

- Seizing

- Levying Upon

- Attaching

- Encumbering

- Pledging

- Conveying

- Selling (Final or Contingent)

- Freezing

- Assuming or Maintaining Custody

- Sequestering

In FAQ 808, OFAC confirms that a specific license is ***not*** required for the Koch Parties to pursue this recognition and enforcement proceeding before the Court.  The Koch Parties' motion for default judgment does not call for either "the entry into a settlement agreement or the enforcement of any lien, judgment, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interest in property blocked pursuant to the Venezuelan Sanctions Regulations."  Fifth Yanos Decl., Ex. 1.  Rather, the Koch Parties only seek an order converting their ICSID Award into a judgment of this Court pursuant to 22 U.S.C. § 1650a.[3]  If, in due course, the Koch Parties seek to enter into a settlement agreement governed by the Venezuela Sanctions Regulations or to enforce a judgment against Venezuela "through execution, garnishment, or other judicial process" directed at property blocked pursuant

---

[3] Indeed, the Koch Parties' motion for a default judgment pursuant to 22 U.S.C. § 1650a seeks none of the remedies listed in FAQ 808 as requiring licensing.  The Koch Parties are neither: (*i*) Taking Possession (Actual or Constructive); (*ii*) Seizing; (*iii*) Levying Upon; (*iv*) Attaching; (*v*) Encumbering; (*vi*) Pledging; (*vii*) Conveying; (*viii*) Selling (Final or Contingent); (*ix*) Freezing (*x*) Assuming or Maintaining Custody; nor (*xi*) Sequestering any legal or equitable interests (including contingent or inchoate interests) in blocked property.

to the Venezuelan Sanctions Regulations, the Koch Parties will do so in compliance with all applicable regulations.  Until such time, however, the Koch Parties do not require OFAC licensing to continue pursuing their case before this Court.[4]

In turn, FAQ 809 is simply inapplicable here because FAQ 809 applies to existing holders of "a writ of attachment on shares of a Government of Venezuela entity whose property and interests in property are blocked pursuant to the Venezuela Sanctions Regulations." Fifth Yanos Decl., Ex. 1.  The Koch Parties do not have a writ of attachment against Venezuela or any other Venezuelan entity.

As the Koch Parties neither seek to *attach* Venezuelan assets in this District nor hold "a writ of attachment on shares of a Government of Venezuela entity," the December 9, 2019 Venezuela FAQs are irrelevant to the issues before the Court.

## II.    PREJUDICE TO THE KOCH PARTIES IF THIS COURT WERE TO SET ASIDE VENEZUELA'S DEFAULT

The Koch Parties are not Venezuela's only creditors.  As noted during the oral argument on December 10, 2019, other creditors of Venezuela are trying to execute judgments in Delaware worth billions of dollars against Venezuela's only significant commercial asset in the United States, specifically through auctioning shares in a Delaware holding company owned by Venezuela's state-owned oil company and adjudged alter ego, Petróleos de Venezuela.[5]  The greatest risk of prejudice to the Koch Parties is that such an auction proceeds without the Koch

---

[4] In *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151, at p. 9 (D.Del. Dec. 12, 2019), the district court rejected Venezuela's request for a stay "until somebody shows up with a license from OFAC saying that they're permitted to go forward."  Instead, the court stayed the attachment proceeding until the "completion of Supreme Court proceedings."

[5] *Crystallex International Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS (D.Del.); *Conocophillips Petrozuata B.V. et al. v. Petroleos de Venezuela S.A. et al.*, No. 16-cv-904 (D.Del.); *OI European Group B.V. v. Bolivarian Republic of Venezuela et al.*, No. 19-cv-290-LPS (D. Del.).

Parties having obtained a judgment on the basis of their Award that would allow them to participate in that auction.

On December 12, 2019, the District Court in Delaware stayed efforts by Venezuela's other creditors to auction the shares in CITGO's parent until proceedings at the Supreme Court are concluded on Venezuela's appeal of the court's *alter ego* finding with respect to PDVSA or the district court is persuaded to lift the stay, whichever comes first.  *See Saint-Gobain Performance Plastics Europe v. Venezuela*, No. 18-cv-1963-LPS, at **8-9 (D. Del. Dec. 12, 2019) (ECF No. 39) (Fifth Yanos Decl., Ex. 2).  The terms of the Delaware District Court's stay mean that the stay potentially could be lifted very soon: if the Supreme Court denies Venezuela's petition for a writ of *certiorari,* the stay could be lifted before the beginning of the summer recess.  If the Koch parties are to participate in an auction at that time, they would need a judgment from this court, as well as a finding that a reasonable time has elapsed following that judgment for execution proceedings to commence in Delaware (approximately 60 days) and, finally, a license from OFAC.  As a result, time remains of the essence for the Koch Parties.

At the same time, as the Koch Parties have already explained: (*i*) a decade has passed since Venezuela's unlawful expropriation of the Koch Parties' investments—seizure of full and effective control over FertiNitro's future production and abrogation of the offtake agreement—and almost two years since the Tribunal issued its Award; (*ii*) Venezuela's default resulted from its culpable conduct in ignoring service and failing, in the first place, to honor the Award pursuant to its Treaty obligations; and (*iii*) Venezuela has failed to present a meritorious defense.[6]  These factors alone demonstrate that there is no good cause to set aside the Clerk's entry of default.

---

[6] *See* Koch Parties' Response to Defendant Bolivarian Republic of Venezuela's Motion to Set Aside the Clerk's Entry of Default and to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF # 32), at pp. 15-18.

Nevertheless, if the Court were to vacate the default and allow Venezuela to defend against the Koch Parties' action pursuant to 22 U.S.C. § 1650a, the issues before the Court would be identical.  Because Section 1650a requires an ICSID award to be given the same full faith and credit as a State court judgment, the only issue before the Court would remain that of personal jurisdiction and service, which the parties have already briefed at length.  Thus, even if the Court were minded to vacate the default, the Court should grant summary judgment without further briefing.

The propriety of such a ruling is all the greater where, as here, another federal district court rejected the identical arguments raised by Venezuela with respect to service and jurisdiction just two days after the parties argued Venezuela's motion before this Court.  *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela et al.*, No. 18-cv-1963-LPS, at **21-22 (D.Del. Dec. 12, 2019), Fifth Yanos Decl., Ex. 2.

In particular, Chief Judge Leonard P. Stark of the U.S. District Court for the District of Delaware ruled that:

> The Hague Service Convention . . . does not permit a foreign sovereign to feign non-service by its own failure to complete and return the required certificate . . . . ***By actually delivering to the defendant, i.e., the Republic, by serving the appropriate documents directly to the Central Authority designated by the Republic of Venezuela, [the Plaintiff] served the Republic, notwithstanding the Republic's failure to provide [the Plaintiff] a certificate.*** [7]

(emphasis added).  This Court should likewise hold that the Koch Parties properly served Venezuela under the Hague Convention on January 25, 2018.[8]

---

[7] Chief Judge Stark also noted that "the first paragraph of Article 15 of the Hague Service Convention provides that a default judgment may be entered where 'the document was ***actually delivered to the defendant*** or to his residence" and stated that "pursuant to this first paragraph of Article 15, the Court finds . . . that Saint-Gobain has served the Republic."  (emphasis in original).  *See* Fifth Yanos. Decl., Ex. 2, at 22.

[8] The United States recognized the Interim President Guaido in late January of 2019, a year *after* the Koch Plaintiffs properly served Venezuela.  (ECF # 30-1, at 3-4).

## **CONCLUSION**

For the reasons set forth above, and in the Koch Parties' Response to Defendant Bolivarian Republic of Venezuela's Motion to Set Aside the Clerk's Entry of Default and to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF # 32), OFAC's latest FAQs do not impact the issues presently before the Court and no grounds exist for setting aside the Koch Parties' Motion for Default Judgement.   Because the default resulted from Venezuela's culpable conduct (Venezuela waited 555 days to appear and file its motion currently pending before the Court), the Court should: (*i*) deny Venezuela's motions to vacate the Clerk's entry of default and for dismissal of the Koch parties' complaint; and (*ii*) grant the Koch Parties' motion for default judgment.

Dated: December 20, 2019
New York, New York

Respectfully submitted,

_____
Alex Yanos (Bar No. NY0219)
Carlos Ramos-Mrosovsky (Bar No. 986363)
Rajat Rana (Bar No. 1032596)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel:    212-210-9400
Fax:    212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Koch Minerals Sàrl and Koch*
*Nitrogen International Sàrl*