**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KOCH MINERALS SÀRL,
KOCH NITROGEN INTERNATIONAL SÀRL,

<em>Plaintiffs</em>,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

<em>Defendant</em>.

Case No. 17-cv-02559-KBJ

**DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS
<u>IMPROPERLY ISSUED AS A MEMORANDUM OPINION UNDER 28 U.S.C. § 636(C)</u>**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro
(D.C. Bar No. 468922)
Kevin A. Meehan
(D.C. Bar No. 1613059)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.:  (202) 452-7373
Fax:  (202) 452-7333
Email:  jpizzurro@curtis.com
Email: kmeehan@curtis.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

Dated: Washington, D.C.
        January 6, 2021

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**RELEVANT BACKGROUND** ...................................................................................5

    A.   Procedures for Serving Process in Accordance with the Hague Convention
        under Section 1608(a)(2) of the FSIA ................................................................5

    B.   Koch's Failed Efforts to Serve Venezuela under the Hague Convention and the
        FSIA ..................................................................................................................8

    C.   Venezuela's Limited Appearance, Reservation of Rights, and Persistent
        Objections to the Magistrate Judge's Jurisdiction ........................................12

**STANDARD OF REVIEW** ......................................................................................15

**ARGUMENT** ...........................................................................................................16

I.    The Magistrate Judge Acted Without Venezuela's Consent When Issuing a Decision
    under Section 636(c) .................................................................................................16

II.   This Court Lacks Personal Jurisdiction over Venezuela Because Plaintiffs Have Not
    Effected Service of Process In Accordance with the Hague Convention or the FSIA .........21

**CONCLUSION** ........................................................................................................32

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Meyer*,
   755 F.3d 866 (9th Cir. 2014) ................................................. 16

*Anderson v. Woodcreek Venture, Ltd.*,
   351 F.3d 911 (9th Cir. 2003) ................................................. 16

*Baker v. Socialist People's Libyan Arab Republic*,
   810 F. Supp. 2d 90 (D.D.C. 2011) ........................................ 18, 19, 20, 21

*Barot v. Embassy of Zambia*,
   785 F.3d 26 (D.D.C. 2015) ................................................. 29, 31

*Box v. Dallas Mexican Consulate Gen.*,
   487 F. App'x 880 (5th Cir. 2012) ....................................... 26

*Cavic v. Republic of Serbia*,
   No. 8:16-cv-1910-JLS-KESx, 2018 U.S. Dist. LEXIS 226683 (C.D. Cal. Mar.
   21, 2018) ................................................................. 24

*Chiang v. United States SBA*,
   331 F. App'x 113 (3d Cir. 2009) ......................................... 32

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) .............................................. 16

*Diz v. Hellmann Int'l Forwarders, Inc.*,
   611 So. 2d 18 (Fla. Dist. Ct. App. 1992) ............................. 25, 28

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Watkins*,
   No. 05-1223, 2007 U.S. Dist. LEXIS 109669 (C.D. Ill. Apr. 24, 2007) ................................ 20

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*,
   246 F. Supp. 3d 52 (D.D.C. 2017) ...................................... 22

*Guar. Tr. Co. v. United States*,
   304 U.S. 126 (1938)....................................................... 30

*Hardy v. Joseph I. Sussman, P.C.*,
   953 F. Supp. 2d 102 (D.D.C. 2013)..................................... 22

*Henry v. Tri-Services, Inc.*,
   33 F.3d 931 (8th Cir. 1994) .............................................. 19, 20

*Jiménez v. Palacios*,
   No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019)........................... 30

*Mezerhane v. República Bolivariana de Venezuela*,
   No. 11-23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802 (S.D.
   Fla. Mar. 19, 2013), *aff'd*, 785 F.3d 545 (11th Cir. 2015)............................ 22, 24, 25

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters.*,
   996 F.2d 21 (2d Cir. 1993) ................................................................. 16

*O'Bryan v. Holy See*,
   549 F.3d 431 (6th Cir. 2008) .............................................................. 31

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
   No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128 (D.D.C. May 21, 2019) ........................ 31

*P.C. Hoag & Co. v. Man Lift Mfg., Co.*,
   No. 15-cv-498-JL, 2018 U.S. Dist. LEXIS 16657 (D.N.H. Jan. 10, 2018) ........................... 19

*Pfizer v. Government of India*,
   434 U.S. 308 (1978) ........................................................................ 30

*Practical Concepts, Inc. v. Republic of Bolivia*,
   811 F.2d 1543 (D.C. Cir. 1987) ........................................................... 21

*Republic of Panama v. Air Panama Internacional, S.A.*,
   745 F. Supp. 669 (S.D. Fla. 1988) ........................................................ 31

*Republic of Panama v. Citizens & S. Int'l Bank*,
   682 F. Supp. 1544 (S.D. Fla. 1988) ...................................................... 31

*Republic of Panama v. Republic Nat'l Bank of New York*,
   681 F. Supp. 1066 (S.D.N.Y. 1988) ..................................................... 31

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019) ........................................... 3, 17, 21, 22, 23, 26, 29

*Richardson v. Attorney General of the British Virgin Islands*,
   No. 2008-144, 2013 U.S. Dist. LEXIS 117763 (D.V.I. Aug. 20, 2013) ................................. 22

*Roell v. Withrow*,
   538 U.S. 580 (2003) .......................................................... 16, 17, 18, 19, 20

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
   No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) ............................... 5, 31

*Stackhouse v. McKnight*,
   168 F. App'x 464 (2d Cir. 2006) ......................................................... 16

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) ......................................................... 21, 22, 26

*United States Fid. & Guar. Co. v. Guzmán*,
   No. 10-1078 (FAB/MEL), 2012 U.S. Dist. LEXIS 147643 (D.P.R. Sep. 20, 2012) ....................... 20

*Universal Trading & Inv. Co. v. Kiritchenko*,
   2007 U.S. Dist. LEXIS 18431 (N.D. Cal. Feb. 28, 2007) ...................................... 25

*Water Splash, Inc. v. Menon*,
   137 S. Ct. 1504 (2017) .................................................................... 29

*Yeldon v. Fisher*,
   710 F.3d 452 (2d Cir. 2013) .............................................................. 16

*Zivotofsky v. Kerry*,
    135 S. Ct. 2076 (2015) .......................................................................... 30

## **Statutes**

28 U.S.C. § 1330(b) ................................................................................ 1, 21

28 U.S.C. § 1608(a) ......................................................... 1, 4, 5, 6, 19, 21, 23

28 U.S.C. § 1608(c) ................................................................................ 6, 23

28 U.S.C. § 1608(d) ..................................................................................... 6

28 U.S.C. § 636(b) ................................................................... 2, 3, 13, 15, 16

28 U.S.C. § 636(c) ......................................... 2, 12, 15, 16, 17, 18, 19, 21

## **Rules**

Fed. R. Civ. P. 12(b)(2) .................................................................................. 1

Fed. R. Civ. P. 12(b)(5) .................................................................................. 1

Fed. R. Civ. P. 72 ............................................................................ 15, 16, 18

Fed. R. Civ. P. 73 ................................................................ 2, 15, 16, 17, 18

LCvR 72.3 ......................................................................................... 14, 16

LCvR 73.1 ....................................................................................... 2, 16, 17

## **International Treaties**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
    Civil or Commercial Matters, Nov. 15, 1965,
    20 U.S.T. 361, 658 U.N.T.S. 163 ........ 3, 4, 6, 7, 8, 9, 10, 16, 21, 22, 23, 24, 25, 26, 27, 28, 29

Convention on the Settlement of Investment Disputes between States and
    Nationals of Other States, Mar. 18, 1965,
    17 U.S.T. 1270 ................................................................................ 8, 9, 10

## **Other Authorities**

Statement of Interest of the United States,
    *Micula v. Gov't of Romania*, No. 17-cv-2332 (APM) (D.D.C. July 13, 2018) ...................... 29

U.S. Amicus Brief,
    *Water Splash, Inc. v. Menon*, No. 16-254 (U.S. Jan. 2017)...................................... 29

U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial
    Documents on the United States Government Pursuant to the Hague Service
    Convention* (Jan. 12, 2018) ................................................................... 26

Defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") submits these Objections to the Magistrate Judge's Proposed Findings and Recommendations improperly issued as a Memorandum Opinion and Order denying Venezuela's motion to dismiss pursuant to Federal Rules 12(b)(2) and (5) for lack of personal jurisdiction and insufficient service of process under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330(b) and 1608(a). Venezuela reserves all rights and defenses and does not waive any of its defenses or its sovereign immunity.

## PRELIMINARY STATEMENT

From the first moment that Venezuela appeared, it did so "for the limited purpose" of moving to dismiss for lack of personal jurisdiction and insufficient service of process. (Opening Br. 9, ECF No. 30-1.)  For the avoidance of doubt, Venezuela expressly reserved "all rights and defenses" in its notice of motion and, for good measure, in its opening brief as well. (Notice of Mot. 1, ECF No. 30; Opening Br. 1, ECF No. 30-1.)  Venezuela also included a proposed order to be signed by the "Hon. Ketanji Brown Jackson, United States District Judge." (ECF No. 30-6.)  At no time did Venezuela consent to the jurisdiction of a magistrate judge, nor did it intend to manifest such consent through its limited appearance, which was intended to have the opposite effect, *i.e.*, to oppose the Court's jurisdiction to take *any* action pertaining to Venezuela.

In the first joint status report filed at the direction of Magistrate Judge Deborah A. Robinson *before* any hearings were held, the parties stipulated that Venezuela did not consent to a magistrate judge's jurisdiction and, at the risk of being redundant, Venezuela separately stated that the parties' "motions should be decided by the district court judge." (Joint Status Report 2, ECF No. 34.)  Venezuela reiterated that position throughout the length of these proceedings, including after the case was re-assigned to Magistrate Judge Zia M. Faruqui, and both Magistrate Judges acknowledged that the matter was before them on referral for a report and

recommendation under 28 U.S.C. § 636(b), not for all purposes on the consent of all parties under 28 U.S.C. § 636(c).  (*See* Minute Order 8/5/2019; Minute Order 11/21/2019; Tr. 12/10/2019 at 18:4-6, ECF No. 38; Tr. 10/13/2020 at 3:4-11, ECF No. 44.)

Nevertheless, in deciding Venezuela's motion, Magistrate Judge Faruqui erroneously believed that he could exercise jurisdiction under section 636(c)—without Venezuela's affirmative consent and over its reservation of rights and persistent objections—because of his determination that Venezuela had been properly served and that, once served, Venezuela had implicitly consented to a magistrate judge's jurisdiction by failing to appear and object in a timely manner.  The Magistrate Judge erred on both counts.

First, consent to a magistrate judge's jurisdiction must be intentional, and a court must endeavor to obtain the affirmative consent of all of the parties under section 636(c), which requires that referrals to a magistrate judge "include procedures to protect the voluntariness of the parties' consent," before exercising jurisdiction under that provision.  28 U.S.C. § 636(c)(2).  Under the Federal Rules and this Court's Local Rules, a party ordinarily signals its consent by affirmatively signing and filing a statement to that effect.  And parties "are free to withhold consent without adverse substantive consequences."  Fed. R. Civ. P. 73(b)(1); LCvR 73.1(b).  Venezuela never filed such a statement or otherwise affirmatively consented to any referral to a magistrate judge—a fact that both Magistrate Judges acknowledged.  (*See* Minute Order 8/5/2019; Tr. 10/13/2020 at 3:4-11, ECF No. 44.)  A magistrate judge cannot infer consent when, as here, a party makes a limited appearance, reserves all rights, indicates its expectation that an Article III judge will decide the case, and objects to the magistrate judge's jurisdiction before any proceedings are held.  The Magistrate Judge's decision is therefore void for lack of consent under section 636(c), and the District Court Judge must decide Venezuela's motion in the first

instance or review the Magistrate Judge's decision *de novo* as a report and recommendation under section 636(b).

Second, and more fundamentally, Venezuela has not been served with process and so this Court lacks jurisdiction to take any action pertaining to Venezuela under the FSIA. As the Supreme Court recently emphasized, service of process on a foreign state is a delicate matter involving sensitive foreign relations and comity concerns; it is not a facile formality that can be dispensed with or relaxed out of convenience for the plaintiff. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1061-62 (2019). In no other case is that admonition more prescient than here.

Since January 2019, Venezuela has been undergoing a momentous political transition amidst an unparalleled humanitarian emergency. The United States and the greater international community has recognized interim President Juan Guaidó as the only legitimate leader of Venezuela. In the midst of this highly publicized, tumultuous political situation, Plaintiffs Koch Minerals SÀRL and Koch Nitrogen International SÀRL ("Koch") requested and obtained a clerk's entry of default on the representation that the Republic had been served in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

However, the documents on record demonstrate that, at most, all Koch has done is ship two *service requests* by private courier to Venezuela's designated central authority under the Hague Convention, the Ministry of People's Power of Foreign Affairs Office of Consular Affairs, which is responsible for processing service requests and which remains under the exclusive control of the Nicolas Maduro regime. Although the only government agency to have been involved in the underlying dispute is the Office of the Attorney General of the Republic,

Koch identified Venezuela's central authority as the agency to be served.  That mailing is insufficient to serve Venezuela, because Koch asked for service on the wrong entity.  The central authority is merely a conduit for effecting service on the proper authorities, not an agent to accept service of process on behalf of the Republic.  There is also no evidence that the relevant judicial papers have actually been served on the appropriate authorities by a method prescribed by Venezuela's internal law and procedures for serving the state in domestic actions as required under the Hague Convention.

By Koch's own recounting, it never received the requisite certificate of service issued by Venezuela's central authority indicating that service has been completed in accordance with Venezuela's internal procedures, and Koch does not purport to have made any efforts to obtain that certificate or ascertain the status of its service request as required by the Convention.  The FedEx delivery receipt upon which Koch relies as proof of service has no legal significance under the Convention or the FSIA.  Nor is there any indication that Koch has made any attempt to serve the proper Venezuelan authorities pursuant to any of the other exclusive methods of serving a foreign state under section 1608(a) of the FSIA.

Still, the Magistrate Judge reasoned that, so long as the package containing the service request and judicial documents to be served reaches the central authority, there is no need for the central authority to arrange for service of process when the party to be served is the state itself. The problem with that novel theory is that it contradicts the Hague Convention's plain language, which provides that the "Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency."  Hague Convention, art. 5.  The Hague Convention recognizes no exceptions.

The Magistrate Judge also failed to appreciate the significance of the United States'
response to the recent political events in Venezuela and its impact on this case.  Following the
United States' recognition of the Guaidó government, the acts of the Maduro regime are a nullity
under U.S. foreign relations law, and thus any efforts to complete service of process through the
Maduro-controlled central authority would be meaningless.  It is difficult to believe that Koch
did not understand as much given the broad news coverage of Venezuela's political crisis, the
United States' ongoing response, and the D.C. Circuit's judicial pronouncements on the legal
consequences of these events.  *See Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019).

Even under the Magistrate Judge's erroneous conclusion that service was completed
before the United States recognized interim President Guaidó, there is no excuse for Koch
waiting several months after Venezuela supposedly defaulted to request and obtain a clerk's
entry of default in the middle of these events, knowing full well that no one from the Maduro
regime could appear in these proceedings and that the service documents could not have reached
representatives of the Guaidó government, the only Venezuelan authority with standing to act on
behalf of the Republic in U.S. courts.  That sort of litigation conduct should not be tolerated.

Because Koch has failed to effect service on the Republic under any applicable provision
of the FSIA, this Court lacks personal jurisdiction and this case should be dismissed.

## RELEVANT BACKGROUND

### A.    Procedures for Serving Process in Accordance with the Hague Convention under Section 1608(a)(2) of the FSIA

Section 1608(a) of the FSIA sets out in hierarchical order the four exclusive methods for
serving process on a foreign state:  (1) "in accordance with any special arrangement" between
the parties; (2) "if no special arrangement exists, by delivery of a copy of the summons and

complaint in accordance with an applicable international convention on service of judicial documents"; (3) if service is not possible under either of the first two methods, by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs"; or (4) if service is not possible under the third method, "through diplomatic channels."  28 U.S.C. § 1608(a)(1)-(4).

Service under the first three provisions is deemed completed "as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed."  28 U.S.C. § 1608(c)(2).  Service under the fourth method—diplomatic channels—is deemed completed "as of the date of transmittal indicated in the certified copy of the diplomatic note."  28 U.S.C. § 1608(c)(1).  Upon being served, a foreign state has sixty days to respond.  28 U.S.C. § 1608(d).

Because no special arrangement exists here, Koch attempted to serve the Republic "in accordance with an applicable international convention" under section 1608(a)(2), namely the Hague Convention to which both Venezuela and the United States are party.  Under the Hague Convention, each contracting state designates a central authority for receiving and processing service requests.  Hague Convention art. 2.  Venezuela has designated the Ministry of People's Power of Foreign Affairs Office of Consular Affairs (*Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares*).[1]  To initiate the process of serving the documents abroad, an applicant must send a service request to the requested state's central authority using the model form (known as the USM-94) provided by the Hague Convention, along with two copies of the judicial documents to be served.[2]  *Id.* art. 3.

---

[1] HCCH, *Venezuela - Central Authority & practical information*, *available at* http://www.hcch.net/index_en.php?act=authorities.details&aid=280 (last updated Nov. 4, 2020).

[2] HCCH, Model Form for Request for Service Abroad of Judicial or Extrajudicial Documents, *available at* https://assets.hcch.net/docs/18774c6c-2c85-41a7-8fe6-55c23acd498b.pdf. (last visited Jan. 6, 2021).  Venezuela

The requested state's central authority may deny a service request that it considers improper.  *Id.* art. 4.  Otherwise, the central authority will arrange to have the documents served on the defendant either by a "method prescribed by its internal law for the service of documents in domestic actions" or by "a particular method requested by the applicant" if permitted by the requested state's own law.  *Id.* art. 5(1)(a), (b).  The Hague Convention preserves the freedom to send judicial documents by postal channels directly to the person being served unless the requested state has objected to service by mail, *id.* art. 10, as Venezuela has done.[3]  The focus of all of these options is to ensure that foreign judicial papers are served within a requested state's territory in accordance with its own internal law and procedures.

Once service is completed, the central authority executes a certificate of service in conformity with the Hague Convention's model form stating "the method, the place and the date of service and the person to whom the document was delivered."[4]  *Id.* art. 6(1)-(2).  If the documents have not been served, the central authority nonetheless returns a certificate setting out "the reasons which have prevented service."  *Id.* art. 6(2).  The executed certificate of service is returned directly to the applicant.  *Id.* art. 6(4).

If a defendant fails to appear, Article 15 of the Hague Convention prohibits a court from entering a default judgment until it has been established that:

> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

---

requires Spanish translations of these documents pursuant to Article 5(3).  *See* HCCH, Declarations and Reservations of Venezuela, at ¶ 1, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=429&disp=resdn (last visited Jan. 6, 2021).

[3] *Id.* at ¶ 3.

[4] HCCH, Authorities, Model Form for Request for Service Abroad of Judicial or Extrajudicial Documents, *available at* https://assets.hcch.net/docs/18774c6c-2c85-41a7-8fe6-55c23acd498b.pdf (last visited Jan. 6, 2021).

> b)  the document was actually delivered to the defendant or to his
>     residence by another method provided for by this Convention,
>
> and that in either of these cases the service or the delivery was
> effected in sufficient time to enable the defendant to defend.

*Id*. art. 15(1).  The executed certificate of service issued by the central authority stating that

service has been completed is sufficient proof that these requirements have been met.

In the event the central authority fails to return a certificate of service, Article 15 provides

that a court may enter a default judgment if three conditions are met:

> a)  the document was transmitted by one of the methods provided
>     for in this Convention,
>
> b)  a period of time of not less than six months, considered
>     adequate by the judge in the particular case, has elapsed since
>     the date of the transmission of the document,
>
> c)  no certificate of any kind has been received, even though every
>     reasonable effort has been made to obtain it through the
>     competent authorities of the State addressed.

*Id.* art.15(2).[5]  The Hague Convention does not provide different procedures for serving process

on the foreign state itself.

**B.    Koch's Failed Efforts to Serve Venezuela under the Hague Convention and
       the FSIA**

In November 2017, Koch commenced this action against Venezuela to enforce an

international arbitral award rendered pursuant to the Convention on the Settlement of Investment

Disputes between States and Nationals of Other States (the "ICSID Convention"), Mar. 18, 1965,

17 U.S.T. 1270.  Shortly thereafter, Venezuela filed a timely application with the arbitral tribunal

---

[5] The United States has declared that, in accordance with Article 15(2), a judge may "give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled."  HCCH, Declarations of the United States, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=428&disp=resdn (last visited Jan. 6, 2021).

for rectification of the award under Article 49(2) of the ICSID Convention.  (Amend. Compl. ¶ 24, ECF No. 7.)

While the rectification proceedings were ongoing, Koch began its attempts to serve process on Venezuela.  According to the documents in the record, Koch began that process by shipping a package via FedEx containing a service request, together with the documents to be served, to the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares*, Venezuela's designated central authority.  (Aff. of Service, Ex. 1 at 2, ECF No. 21-2.)  Although the only government agency to have represented Venezuela in the underlying arbitral dispute is the Office of the Attorney General of the Republic (*Procuraduría General de la República*) (Award ¶ 1.8, ECF No. 1-1.), Koch's USM-94 form requested service on the Republic at the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares*.[6]  Koch's USM-94 form also requested that the judicial documents be served "in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the [Hague] Convention," which calls for service by a "method prescribed by [Venezuela's] internal law for the service of documents in domestic actions."  (Aff. of Service, Ex. 1 at 2, ECF No. 21-2; *see* Aff. of Service ¶ 5, ECF No. 21-1.)  According to a FedEx shipping receipt filed by Koch, that package was delivered to "Shipping/Receiving" at the "Power for Foreign Affairs Ministry Bureau of Consular Relations" and signed by "K.ORDONES" on January 25, 2018.[7]  (Aff. of Service, Ex. 2, ECF No. 21-3; *see* Aff. of Service ¶ 6, ECF No. 21-1.)

---

[6] The address listed for the Office of the Attorney General on ICSID's letter notifying the parties of the award is "Av. Los Ilustres, c/c calle Francisco Lazo Martí, Edif. Procuraduría General de la Rep., Piso 8, Urb. Santa Monica Caracas 1040, Venezuela."  (ECF No. 1-1 at 2.)  The address designated by Koch for service on the Republic at the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares* is "Avenida Urdaneta, Esquina Carmelitas a Puente Llaguno, Torre Anexo a Torre MRE Piso 1, Caracas, 1010."  (Aff. of Service, Ex. 1 at 2, ECF No. 21-2; Aff. of Service, Ex. 4 at 2, ECF No. 21-5.)

[7] No one by that name appeared on the list of contact persons for Venezuela's central authority listed on the Hague Convention website around that time.  (*See* Aff. of Service, Ex. 3 at 3, ECF No. 21-4.)

In April 2018, after Koch had sent this first mailing, the arbitral tribunal issued its decision on rectification, concluding that an error had occurred in the calculation of damages and reducing the total amount awarded by about $18.1 million.  (Amended Compl. ¶ 2, ECF No. 7.) Koch filed an amended complaint incorporating the tribunal's decision on rectification, and proceeded to attempt service on the Republic by shipping another package via FedEx to the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares*. The package contained the amended papers to be served, together with a new USM-94 form requesting service of process on the Republic, again, at the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares*.  Koch's USM-94 form requested that the amended judicial documents be served "in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the [Hague] Convention."  (Aff. of Service, Ex. 4 at 2, ECF No. 21-5; *see* Aff. of Service ¶¶ 9-10, ECF No. 21-1.)  According to a FedEx shipping receipt filed by Koch, that package was delivered to "Receptionist/Front Desk" at the "Ministry of Popular Power Consular Relations Office" in Caracas and signed by "J.OSE VERA" on June 13, 2018.[8]  (Aff. of Service, Ex. 5 at 2, ECF No. 21-6; ECF No. 23.)

On August 17, 2018, Venezuela timely applied for annulment of the award in the arbitral forum under Article 52 of the ICSID Convention.  Pursuant to Article 52(5), Venezuela's annulment application automatically triggered a provisional stay of enforcement of the award. The ICSID annulment committee did not lift the stay until April 1, 2019.  (ICSID Procedural Order No. 1 ¶¶ 1-3, 36, ECF No. 25-4; *see* Fourth Status Report ¶ 3, ECF No. 22.)

Meanwhile, the political situation in Venezuela fundamentally changed when, on January 10, 2019, National Assembly President Juan Guaidó became the interim President of Venezuela

---

[8] No one by that name appeared on the list of contact persons for Venezuela's central authority listed on the Hague Convention website around that time.  (*See* Aff. of Service, Ex. 3 at 3, ECF No. 21-4.)

pursuant to Article 233 of the Venezuelan Constitution.  On January 23, President Donald Trump officially recognized Mr. Guaidó as interim President of Venezuela and rejected the legitimacy of the Maduro regime.[9]  To facilitate the transition of power, the Venezuelan National Assembly enacted the "Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela."  (Pizzurro Decl. ¶ 3, ECF No. 30-3.)[10] On February 5, pursuant to that statute, interim President Guaidó appointed a Special Attorney General of Venezuela and granted him the power to appoint counsel for the Republic.  (*Id.*; *see* Pizzurro Decl. Ex. 1, ECF No. 30-4.)  The National Assembly approved the appointment of the Special Attorney General and, on March 19, passed a resolution designating him as the only person having the power to represent the Republic and to appoint legal counsel in cases outside of Venezuela.[11]  (Pizzurro Decl. ¶ 4, ECF No. 30-3; *see id.* Ex. 2, ECF No. 30-5.)

In May 2019, after these events had been highly publicized in media outlets around the world, Koch submitted an affidavit requesting a clerk's entry of default, asserting that Venezuela had been served with the original complaint more than a year earlier on January 25, 2018, and then again with the amended complaint also months earlier on June 13, 2018.  (Aff. of Service ¶¶ 7, 11, ECF No. 21-1.)  To date, Koch has not filed or purported to have received any

---

[9] THE WHITE HOUSE, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela* (Jan. 23, 2019), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.  Since then, U.S. government officials including the President and Secretary of State have publicly reiterated the position of the United States on multiple occasions.  *See, e.g.*, U.S. DEP'T OF STATE, *Press Statement*, *The United States Condemns Venezuela's Fraudulent Legislative Elections* (Dec. 7, 2020), *available at* https://www.state.gov/the-united-states-condemns-venezuelas-fraudulent-legislative-elections/; THE WHITE HOUSE, *Proclamation by President Donald J. Trump on Pan American Day and Pan American Week, 2020* (Apr. 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-pan-american-day-pan-american-week-2020/.

[10] Citations to "Pizzurro Decl." refer to the Declaration of Joseph D. Pizzurro in Support of Defendant Bolivarian Republic of Venezuela's Motion to Set Aside the Clerk's Entry of Default and to Dismiss, dated August 2, 2019. (ECF No. 30-3.)

[11] The undersigned counsel represents the Guaidó administration at the direction of the Special Attorney General. (Pizzurro Decl. ¶ 5, ECF No. 30-3.)

certificate of service issued by Venezuela's central authority or any other evidence indicating that service has been completed in accordance with Venezuela's internal law and procedures.

### C.     Venezuela's Limited Appearance, Reservation of Rights, and Persistent Objections to the Magistrate Judge's Jurisdiction

In May 2019, at Koch's request, the clerk of the court entered a default on the basis that Venezuela had been duly served on June 13, 2018.  (ECF No. 24.)  Days later, Koch filed a motion for entry of a default judgment.  (ECF No.  25.)

That same month, May 2019, District Court Judge Ketanji Brown Jackson, to whom the case was originally assigned, entered a minute order referring Koch's motion for a default judgment to a magistrate judge for "Report and Recommendation."  (Minute Order 5/20/2019.)  The motion was assigned to Magistrate Judge Robinson.  On May 29, Koch unilaterally filed a notice of consent to referral of the case to the Magistrate Judge for all purposes under 28 U.S.C. § 636(c).  (ECF No. 27.)  Two days later, the District Court Judge so-ordered Koch's notice of consent, referring the case for all purposes to Magistrate Judge Robinson.  (ECF No. 28.)

Magistrate Judge Robinson scheduled a hearing on Koch's motion for August 6, 2019.  That month, before the hearing was held, Venezuela as represented by the Guaidó administration appeared for the first time "for the limited purpose of moving to set aside the clerk's entry of default and to dismiss this action for ineffective service of process and lack of personal jurisdiction."  (Opening Br. 9, ECF No. 30-1.)  In its notice of motion and opening brief, Venezuela expressly reserved "all rights and defenses."  (Notice of Mot. 1, ECF No. 30; Opening Br. 1, ECF No. 30-1.)  Venezuela also included a proposed order to be signed by the "Hon. Ketanji Brown Jackson, United States District Judge."  (ECF No. 30-6.)

Immediately after Venezuela's appearance, Magistrate Judge Robinson cancelled the August 6 hearing, noting that the case had been referred to her for a "report and

recommendation" on Koch's motion for a default judgment and that only Koch had consented to referral of the case to a magistrate judge for all purposes.  (Minute Order 8/5/2019.)  The minute order directed the parties to meet and confer on a schedule for further proceedings and to file a status report.

In a joint status report, the parties stipulated that Venezuela had not consented to a magistrate judge's jurisdiction, and Venezuela took the position that the parties' "motions should be decided by the district court judge."  (Joint Status Report 2, ECF No. 34.)  Magistrate Judge Robinson scheduled a status hearing but then *sua sponte* rescheduled and converted the hearing into an oral argument on the premise that Venezuela's motion had "been referred to this court for Report and Recommendation."  (Minute Order 11/21/2019.)

During oral argument, Magistrate Judge Robinson stated, "[M]y task at this time is preparation of a report and recommendation for consideration by the district judge initially assigned to this matter."  (Tr. 12/10/2019 at 18:4-6, ECF No. 38.)  Koch did not object or otherwise take issue with that statement.  While the Republic participated in the oral argument, it did so on the understanding that the motions had been referred for a report and recommendation pursuant to section 636(b) based on Magistrate Judge Robinson's statement.

Magistrate Judge Robinson also ordered supplemental briefing on developments that had occurred after close of briefing for the benefit of the District Court Judge that would review the report and recommendation.  (*Id*. at 18:3-8.)  In its supplemental brief, Venezuela stated that it was proceeding under the "understanding that the Magistrate Judge will be issuing a report and recommendation pursuant to Local Civil Rule 72.3 and not a judgment pursuant to Local Civil Rule 73.1," and reiterated the position set forth in the joint status report that Venezuela "did not consent to referral of the case to the Magistrate Judge and that the pending motions should be

decided by the District Judge."  (Second Suppl. Br. 1 n.2, ECF No. 35.)  Koch did not address this issue in its supplemental brief.

Following Magistrate Judge Robinson's retirement, on September 11, 2020, the case was directly re-assigned to Magistrate Judge Faruqui.  Two weeks later, Koch filed an unopposed motion requesting a status conference.  That motion stated:  "Venezuela does not oppose the Motion, without prejudice, however, to its position on the referral of this matter to a Magistrate Judge."  (Unopposed Motion 1, ECF No. 39.)  Koch's motion did not otherwise address the Magistrate Judge's jurisdiction.  Magistrate Judge Faruqui granted Koch's motion and held a status conference on October 13, 2020.  (ECF No. 40.)

Magistrate Judge Faruqui began the October 13 hearing by acknowledging the Republic's "objection to proceeding before a magistrate judge" and noting that District Court Judge Ketanji Brown Jackson had been informed that the case was not before the Magistrate Judge on consent. (Tr. 10/13/2020 at 3:4-11, ECF No. 44.)  Koch then argued for the first time that Venezuela had somehow waived the right to object to a magistrate judge's jurisdiction and so Magistrate Judge Faruqui should render a final decision and judgment as opposed to issuing a report and recommendation.  Koch's counsel misrepresented that he had previously briefed and raised the issue "in front of Judge Robinson" (*id.* at 3:19-4:16), when in reality Koch had never mentioned that issue in its papers or during oral argument before Magistrate Judge Robinson.  For its part, Venezuela restated its position that it did not consent to a magistrate judge's jurisdiction and that, were the Magistrate Judge to issue a decision, "the case would proceed as contemplated under Local Rule 72.3" (*id.* at 5:1-2), which deals solely with "Matters for Report and Recommendation by Magistrate Judges," LCvR 72.3.

After the hearing, the Magistrate Judge directed the parties to file supplemental briefs on "Defendant's objection to jurisdiction before a Magistrate Judge under Local Rule 72.3." (Minute Order 10/13/20.)  Venezuela, again, out of an abundance of caution, asserted its right to have its motion decided by an Article III judge and focused its second supplemental brief on expressly refuting any contention that it had consented to a magistrate judge's jurisdiction under either Federal Rule 72 and related section 636(b) or Federal Rule 73 and related section 636(c). (Second Suppl. Br. 5-9, ECF No. 42.)

On December 23, Magistrate Judge Faruqui issued a "Memorandum Opinion" in which he asserted all-purpose jurisdiction under section 636(c) based on his determination that Venezuela had been properly served and that, once served, it had implicitly consented to a magistrate judge's jurisdiction by failing to appear and object in a timely manner.  (Op. 20-25, ECF No. 46.)  The Magistrate Judge thus determined that he had the authority directly to deny Venezuela's motion to dismiss rather than issue a report and recommendation.  The Magistrate Judge also granted Venezuela's motion to set aside the clerk's entry of default, denied Koch's motion for a default judgment, and ordered the parties to confer and file a status report on how the case should proceed by January 5, 2021.  Judgment has not been entered, nor will it be entered without further proceedings.  (*See* Order 12/23/2020, ECF No. 45.)

## STANDARD OF REVIEW

When a magistrate judge decides a matter under section 636(c) without a party's consent, the aggrieved party may appeal to the district court judge and challenge the magistrate judge's decision by filing objections as if it were a report and recommendation under section 636(b). The district court judge may vacate the magistrate judge's decision as void for lack of jurisdiction and decide the parties' motions in the first instance or review it *de novo* as a report and recommendation.  *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 180 (3d Cir.

2012); *N.Y. Chinese TV Programs, Inc. v. U.E. Enters.*, 996 F.2d 21, 25 (2d Cir. 1993)

(collecting cases)).  "A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see also*

Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c).[12]

## ARGUMENT

Venezuela objects to that Magistrate Judge's decision insofar as he determined that (i)

Venezuela implicitly consented to a magistrate judge's jurisdiction under section 636(c) and that

(ii) Venezuela was served in accordance with the Hague Convention and the FSIA.

## I.     The Magistrate Judge Acted Without Venezuela's Consent When Issuing a Decision under Section 636(c)

Under the Federal Magistrate Act, the scope of a magistrate judge's jurisdiction depends

on a district court judge's decision to refer the case for "any and all proceedings" under section

636(c) or only certain matters for a report and recommendation under section 636(b).  However,

a civil case can only be referred for all purposes under section 636(c) when all of the parties have

consented.  28 U.S.C. § 636(c); FED. R. CIV. P. 73(a); LCvR 73.1(a); *Roell v. Withrow*, 538 U.S.

580, 585 (2003).  The "[r]ules of court for the reference of civil matters to magistrate judges

shall include procedures to protect the voluntariness of the parties' consent."  28 U.S.C.

§ 636(c)(2).  "To signify their consent, the parties must jointly or separately file a statement

consenting to the referral."  FED. R. CIV. P. 73(b)(1); *see also* LCvR 73.1(b).  And parties "are

free to withhold consent without adverse substantive consequences."  FED. R. CIV. P. 73(b)(1);

---

[12] Even when an aggrieved party appeals directly to the circuit court under section 636(c)(3), the court of appeals reviews the parties' consent to the magistrate judge's jurisdiction in deciding its own appellate jurisdiction.  *See Allen v. Meyer*, 755 F.3d 866, 867-68 (9th Cir. 2014); *Dewey*, 681 F.3d at 180.  If the court of appeals determines there was no consent, it will dismiss the appeal for lack of appellate jurisdiction and remand with instructions for the district court judge to vacate the magistrate judge's decision and decide the case in the first instance or, alternatively, to review the magistrate judge's decision *de novo* as a report and recommendation.  *See, e.g.*, *Allen*, 755 F.3d at 869; *Stackhouse v. McKnight*, 168 F. App'x 464, 467 (2d Cir. 2006); *Anderson v. Woodcreek Venture, Ltd.*, 351 F.3d 911, 919 (9th Cir. 2003); *Yeldon v. Fisher*, 710 F.3d 452, 454 (2d Cir. 2013).

*see Roell*, 538 U.S. at 586 ("The procedure created by 28 U.S.C. § 636(c)(2) and Rule 73(b) thus envisions advance, written consent communicated to the clerk, the point being to preserve the confidentiality of a party's choice, in the interest of protecting an objecting party against any possible prejudice at the magistrate judge's hands later on.").[13]  In short, unless all of the parties consent to a magistrate judge's jurisdiction, a district court judge must ultimately decide any matters referred to a magistrate judge under section 636(c).

Although both Magistrate Judges acknowledged that the Republic had not affirmatively consented but rather objected to a magistrate judge's jurisdiction, Magistrate Judge Faruqui concluded that he could exercise all-purpose jurisdiction because Venezuela implicitly consented to such jurisdiction by defaulting and then submitting to a magistrate judge's jurisdiction in silence.  That determination is wrong both as a matter of law and fact.  A party's express written consent is ordinarily required to confer jurisdiction under section 636(c).  *See* Fed. R. Civ. P. 73(b)(1); LCvR 73.1(b).  Consent to proceed before a magistrate judge may be implied where a party "voluntarily appeared" and participated in a trial in front of a magistrate judge and did not raise any objection until after entry of final judgment.  *Roell*, 538 U.S. at 590.  The Supreme Court in *Roell* made clear that the sort of appearance that establishes implicit consent is a party's "general appearance" intended as a submission to a magistrate judge's jurisdiction "without any reservation, after being notified of [the] right to refuse and after being told that [the magistrate judge] intended to exercise case-dispositive authority."  *Id*. at 586, 587 n.5.

That situation has no application here.  Venezuela appeared "for the limited purpose" of contesting the court's jurisdiction, not with the intent to submit to it.  (Opening Br. 9, ECF No. 30-1.)  *See Harrison*, 139 S. Ct. at 1055 (noting that Sudan had "made an appearance for the

---

[13] A referral to a magistrate judge under section 636(c) may be retracted at any time by a district court judge for good cause.  *See* 28 U.S.C. § 636(c)(4).

purpose of contesting jurisdiction").  Venezuela also expressly reserved "all rights and defenses" (Notice of Mot. 1, ECF No. 30; Opening Br. 9, ECF No. 30-1) and signaled its expectation that District Court Judge Ketanji Brown Jackson would decide its motion by naming her as the signor on the proposed order.  (ECF No. 30-6.)  The Republic never affirmatively consented but rather withheld its consent and persistently objected to a magistrate judge's jurisdiction before any proceedings were held.  In fact, from the outset, the parties stipulated that a magistrate judge could not exercise jurisdiction under section 636(c) because the Republic did not consent.  (Joint Status Report 2, ECF No. 34.)  Furthermore, Magistrate Judge Faruqui never communicated his intent to exercise all-purpose jurisdiction and never informed Venezuela of its right to refuse. *See Roell*, 538 U.S. at 587 n.5 ("Certainly, notification of the right to refuse the magistrate judge is a prerequisite to any inference of consent, so that aspect of § 636(c)(2)'s protection is preserved.").  To the contrary, on multiple occasions, Magistrate Judge Robinson noted that the case had been referred to her for report and recommendation, and Magistrate Judge Faruqui recognized that the parties were not before him on consent and ordered supplemental briefing only as to his authority under Federal Rule 72, not Federal Rule 73.

Given the Republic's intentional decision to withhold consent and to object repeatedly on the record after entering only a limited appearance with an express reservation of rights and expectation that an Article III judge would decide its motion, it is difficult to conceive how the Republic could have implicitly consented to have the Magistrate Judge decide the motion—let alone exercise all-purpose jurisdiction under section 636(c).

The Magistrate Judge relied primarily on *Baker v. Socialist People's Libyan Arab Republic*, 810 F. Supp. 2d 90 (D.D.C. 2011).  That case does not support the Magistrate Judge's conclusion.  In *Baker*, the plaintiff sued both Libya and Syria.  Syria defaulted after being served

under section 1608(a)(3) of the FSIA.  Six years later, the case was referred to a magistrate judge for all purposes under section 636(c).  The magistrate judge held a five-day evidentiary hearing on the plaintiffs' claims within a few months and entered a default judgment against Syria nearly a year later.  *Id.* at 93-94.  Thereafter, Syria appeared, filed a notice of appeal, and moved to stay pending appeal on various grounds, including that it had not consented to entry of judgment by a magistrate judge.  *Id.* at 95.

In assessing Syria's likelihood of success on appeal, the court in *Baker* noted that section 636(c) requires the affirmative consent of all parties and that this consent requirement serves to protect a "litigant's right to be heard by an Article III judge."  *Id.* at 98.  The court recognized that, under *Roell*, "consent may be implied where the party had appeared and argued before the magistrate judge, and withheld any objection to jurisdiction *until after the entry of final judgment*."  *Id.* (emphasis added).  The court found that Syria chose to "sit back and wait" during eight years of litigation only to raise an objection to the magistrate judge's jurisdiction after a full evidentiary hearing and the entry of judgment.  *Id.*  The court condemned Syria's strategy as "gamesmanship" and denied the stay, concluding that Syria likely could not object to a magistrate judge's jurisdiction for the first time after entry of judgment.  *Id.* at 98-99.

*Baker* is distinguishable on several grounds.  First, as *Baker* itself recognized, consent cannot be implied on the part of a defendant where the defendant was not properly served, *id.* at 99, which is the case here as explained more fully in section II below.  Moreover, even when service is proper, courts have held that a party's consent to a magistrate judge cannot be inferred simply because the party has defaulted.  *See Henry v. Tri-Services, Inc.*, 33 F.3d 931, 933 (8th Cir. 1994); *P.C. Hoag & Co. v. Man Lift Mfg., Co.*, No. 15-cv-498-JL, 2018 U.S. Dist. LEXIS 16657, at *2 (D.N.H. Jan. 10, 2018) (citing *Roell* and *Henry*); *United States Fid. & Guar. Co. v.*

*Guzmán*, No. 10-1078 (FAB/MEL), 2012 U.S. Dist. LEXIS 147643, at *3 n.1 (D.P.R. Sep. 20, 2012) (collecting cases); *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Watkins*, No. 05-1223, 2007 U.S. Dist. LEXIS 109669, at *7 (C.D. Ill. Apr. 24, 2007) (citing *Roell* and *Henry*).

Second, the court in *Baker* held that a defendant's consent to proceed before a magistrate judge can be implied where the defendant objected to the magistrate judge's jurisdiction only ***after*** a full evidentiary hearing and the entry of judgment.[14]  *See Baker*, 810 F. Supp. 2d at 98 ("At no point in the eighteen months between referral of this case and entry of final judgment did the Syrian defendants appear to voice their absence of consent or insist on a trial before a district court judge.").  Here, no judgment has been entered and no evidentiary hearing has been conducted.  By contrast, the parties stipulated that the Republic did not consent to proceed before a magistrate judge, and Venezuela separately reserved its right to have the pending motions decided by an Article III judge, indicated its expectation that the District Court Judge would decide the motions, and objected to a magistrate judge's jurisdiction before any hearings were held.

Third, the *Baker* court's concerns about gamesmanship and judicial efficiency are not present here.  Unlike the defendant in *Baker* who waited eight years to appear after defaulting, any delay in the Republic's appearance here can be attributed to Koch's failure to properly serve the Republic.  Furthermore, the newly recognized Guaidó administration—the only representatives with authority to appear on behalf of Venezuela in U.S. courts—appeared and contested the court's jurisdiction within a few months of taking office during a tumultuous and unprecedent political transition that is still underway.  Even the Magistrate Judge recognized that, unlike in *Baker*, Venezuela was not a "totally unresponsive party in this case."  (Op. 25,

---

[14] While Syria failed to appear before a default judgment was entered, no default judgment has been entered here.

ECF No. 46 (internal quotation marks omitted).)[15]  Once the Republic appeared, it objected to

the Magistrate Judge's jurisdiction immediately upon being directed to respond to the Magistrate

Judge's order and well before the Magistrate Judge held any hearings.

      If anyone is playing games in this case, it is Koch who stipulated that the Republic did

not consent to the jurisdiction of the Magistrate Judge in a joint status report and then never

challenged the Republic's objection until more than a year later when Koch's counsel argued to

Magistrate Judge Faruqui that Venezuela had waived the right to object and represented that

Koch had raised and argued that issue in front of Magistrate Judge Robinson, even though that

assertion was demonstrably false.

      Under these circumstances, there is simply no basis to find that the Republic impliedly

consented to a magistrate judge's jurisdiction under section 636(c).

## II.     This Court Lacks Personal Jurisdiction over Venezuela Because Plaintiffs Have Not Effected Service of Process In Accordance with the Hague Convention or the FSIA

      Under the FSIA, a district court lacks personal jurisdiction over a foreign state unless

service of process has been effected pursuant to section 1608(a).  28 U.S.C. § 1330(b); *Practical*

*Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987).  Section

1608(a) sets forth in hierarchical order the exclusive procedures for serving a foreign state, and

strict adherence to all of its provisions is necessary to perfect service.  *Harrison*, 139 S. Ct. at

1062; *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).

      Where, as here, a plaintiff attempts to serve a foreign state in accordance with the Hague

Convention under section 1608(a)(2), strict compliance with all of the Convention's

---

[15] It bears note that the clerk of the court entered the default (not a default judgment) just months after the establishment of the Guaidó government and its recognition by the United States as the sole legitimate government of Venezuela entitled to represent the Republic in U.S. courts.  Given the change in government and Koch's failure to attempt service on the Guaidó government after service under the Hague Convention had failed, the Republic's appearance less than three months after the entry of default can hardly be said to raise the sort of concerns that weighed heavily on the court's decision in *Baker*.

requirements is also required.  *Mezerhane v. República Bolivariana de Venezuela*, No. 11-23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802, at \*9-10 (S.D. Fla. Mar. 19, 2013), *aff'd*, 785 F.3d 545 (11th Cir. 2015); *Richardson v. Att'y Gen. of the British Virgin Islands*, No. 2008-144, 2013 U.S. Dist. LEXIS 117763, at \*36, \*38 (D.V.I. Aug. 20, 2013).  Neither substantial compliance nor actual notice is enough.  *Harrison*, 139 S. Ct. at 1062; *Transaero*, 30 F.3d at 154; *Mezerhane*, 2013 U.S. Dist. LEXIS 196802, at \*4, \*10; *Richardson*, 2013 U.S. Dist. LEXIS 117763, at \*36.

"[T]he plaintiff has the burden of establishing the validity of service of process," *Hardy v. Joseph I. Sussman, P.C.*, 953 F. Supp. 2d 102, 107 (D.D.C. 2013) (citation omitted), and "bears the burden of establishing a prima facie case of personal jurisdiction by coming forward with specific and pertinent facts," *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 67 (D.D.C. 2017).

Koch has not completed service on Venezuela in accordance with the Hague Convention. All Koch has purportedly done is send two *service requests* to Venezuela's central authority.  To complete service under the Hague Convention, the central authority must arrange to have the relevant judicial papers served on the governmental representatives authorized to accept service of process on behalf of the Republic according to the "method prescribed by its internal law for the service of documents in domestic actions."  Hague Convention, art. 5(1).  Koch has never identified what Venezuelan law requires "for service of documents in domestic actions" against the state itself.  Nor has come forward with any evidence that the relevant judicial papers have been served or delivered to the appropriate authorities in accordance with that law.

Ordinarily a plaintiff can establish that service has been completed by producing the certificate of service issued by the requested state's central authority on the Convention's model

form, stating the method, place and date of service.  Hague Convention art. 6(1)-(2).  Article 6 of

the Convention does not recognize any other proof of service.  Under the FSIA, section

1608(a)(2)—the provision relating to the Hague Convention—service is also deemed completed

as of the date indicated on the executed certificate of service issued by the central authority,

which is the only "proof of service applicable" under Article 6 of the Hague Convention.  Koch

never obtained a certificate of service issued by Venezuela's central authority.  A FedEx

shipping receipt is not a valid substitute for a certificate of service under the Hague Convention

or the FSIA.[16]  Nor has Koch attempted service of process under any other applicable provision

of the FSIA.  In short, there is no evidence that service on Venezuela has been effected in

accordance with the Hague Convention or the FSIA.

 Koch seeks to shortcut this entire process by asserting that simply mailing the judicial

papers to the central authority (which in Venezuela happens to be housed in the Ministry of

Foreign Affairs) is sufficient to complete service of process, and that there is no need for the

central authority to arrange for service on the appropriate governmental representatives, because

Venezuela *itself* is the party to be served and the Ministry of Foreign Affairs is part of the

government.  The Magistrate Judge erroneously accepted that theory.

 To start, the Magistrate Judge mistakenly characterized Venezuela's primary argument as

centering around Koch's failure to obtain a certificate of service from Venezuela's central

authority. The Magistrate Judge conflated two distinct issues under the Hague Convention:  the

procedures for service of process and the requirements for entering a default judgment.  (Op. 13-

17, ECF No. 46.)  Venezuela's principal argument as to why service has not been completed is

---

[16] The Magistrate Judge accepted a FedEx delivery receipt as proof of service, not based on any provision of the
Hague Convention, but based on the FSIA's language referring to a "signed and returned postal receipt" under
section 1608(c)(2).  But the only case relied upon by the Magistrate Judge for that proposition involved service by
mail under section 1608(a)(3), not service through the central authority "in accordance with" the Convention under
section 1608(a)(2).  (*See* Op. 12, 13, ECF No. 46 (relying on *Harrison*)).

that there is no indication that the relevant judicial papers have actually been served on the proper government representatives in accordance with Venezuela's internal law and procedures for serving the state in domestic actions as required under Article 5(1) of the Hague Convention.

As multiple courts have recognized, transmission to the central authority is only the first step; the central authority must still arrange for service of process according to the foreign state's internal procedures for service to be effective, even when the party to be served is the foreign state itself. *See, e.g.*, *Cavic v. Republic of Serbia*, No. 8:16-cv-1910-JLS-KESx, 2018 U.S. Dist. LEXIS 226683, at *7 & n.2 (C.D. Cal. Mar. 21, 2018) ("[T]he arrival of [Plaintiff's] request for service at the [Serbian] Ministry of Justice [Serbia's central authority] . . . does not constitute service on Serbia itself.  The arrival of the papers at the Ministry of Justice is a 'request for service;' service must then be effectuated by the Ministry upon the parties within Serbia."); *Mezerhane*, 2013 U.S. Dist. LEXIS 196802, at *4-5, *10 (finding that transmission of the papers to the Venezuelan central authority did not complete service on the Venezuelan government itself, because the central authority had indicated that it was still in the process of attempting service in accordance with Venezuela's internal procedures after the party had inquired with the central authority about the status of its service request).  While a certificate issued by the central authority indicating that service was completed is dispositive proof of service, Koch has not produced such certificate, nor made any reasonable effort to procure one.  And Koch has not produced any other evidence to establish that service has been completed on the appropriate authorities in accordance with Venezuela's internal procedures pursuant to Article 5(1) of the Hague Convention.

While the Hague Convention contemplates two scenarios in which a default judgment may be entered, neither applies here.  Under Article 15(1), which applies when a party fails to

appear after it has been served, Koch has failed to identify the relevant "internal law" for serving process on the Republic "in domestic actions," let alone establish that those procedures have been complied with.    Hague Convention, art. 15(1)(a).  And, as explained below, delivery of the documents to the central authority does not constitute delivery to "the defendant . . . by another method provided for by this Convention."  *Id*. art. 15(1)(b).  As for Article 15(2), which applies when a central authority fails to issue a certificate of service within an "adequate" period of time of "no less than six months," Koch admittedly made no effort, much less the "reasonable effort" required by this provision of the Convention, to contact Venezuela's central authority to ascertain the status of its service requests or procure an executed certificate of service indicating that the process papers have, in fact, been served on the proper authorities in accordance with Venezuela's internal procedures.  *See Mezerhane*, 2013 U.S. Dist. LEXIS 196802, at *10 (recognizing plaintiff's efforts to obtain information on the status of service from Venezuela's central authority, and the central authority's response confirming that it was still in the process of serving the appropriate departments of the Venezuelan government); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 U.S. Dist. LEXIS 18431 (N.D. Cal. Feb. 28, 2007) (finding that more than six months had elapsed since the documents had been transmitted to the central authority for service on a private party, but refusing to enter a default judgment because a single follow-up call to the central authority did not satisfy the "reasonable effort" requirement).[17]  Regardless, a defendant may appear at a later time and seek relief from a default judgment if "the defendant, without any fault on his part, did not have knowledge of the documents in sufficient time to defend" the action.  Hague Convention, art. 16; *see, e.g.*, *Diz v. Hellmann Int'l Forwarders, Inc.*, 611 So. 2d 18, 19-20 (Fla. Dist. Ct. App. 1992) (holding that Article 15 does not authorize a

---

[17] Furthermore, no amount of time can be fairly deemed "adequate" given the extraordinary political realities in Venezuela at this time.

default judgment when it is known that service has not been effected, for instance, because "the plaintiff had given a bad address" to the central authority).

Indeed, if the defendant in this case were a private party rather than the state, there is no doubt that Koch's service attempt—*i.e.*, delivery of a FedEx package containing a service request to Venezuela's central authority without more—would be insufficient.  If all the other requirements could be avoided when serving the state itself, it would be easier to serve a foreign state than to serve a private party within that state's own territory—an absurd result especially considering the heightened concerns and questions of comity involved in actions against foreign sovereigns.  The Supreme Court recently cautioned against construing the FSIA's service of process provisions in such a manner:  "It would be an odd state of affairs for a foreign state's inhabitants to enjoy more protections in federal courts than the foreign state itself, particularly given that the foreign state's immunity from suit is at stake."[18]  *Harrison*, 139 S. Ct. at 1060.

Contrary to the Magistrate Judge's assessment, comity is a relevant consideration here, since the United States has advised foreign litigants that "receipt of a request for service from a foreign court by the U.S. Central Authority is not effective service" on the United States itself, and that "[s]ervice is only complete upon receipt of the documents by the appropriate U.S. Government office or agency."[19]  The U.S. central authority is housed within the Department of

---

[18] None of the cases relied upon by the Magistrate Judge stands for the proposition that the ordinary procedures for serving process under the Hague Convention do not apply to service on the state itself.  For instance, in *Box v. Dallas Mexican Consulate General*, the Fifth Circuit did not hold that Mexico had actually been served in accordance with the Hague Convention, but only that it had sufficient notice of the action and that the plaintiff had made every reasonable effort to obtain a certificate of service prior to obtaining a default judgment.  487 F. App'x 880, 886-87 (5th Cir. 2012).  In any event, that decision is not good law.  It conflicts both with D.C. Circuit and Supreme Court precedent, which hold that actual notice is not enough and that strict compliance with the FSIA's service provisions is required to serve the foreign state itself.  *Harrison*, 139 S. Ct. at 1062; *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).  In that same vein, the Magistrate Judge's observation that knowledge of these proceedings should be imputed to Venezuelan government officials for purposes of finding implied consent is misplaced.

[19] U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial Documents on the United States Government Pursuant to the Hague Service Convention* 2 (Jan. 12, 2018), *available at* https://www.justice.gov/civil/page/file/1036571/download.

Justice in the Office of International Judicial Assistance (the "OIJA").[20]  The Magistrate Judge

took the United States' position to apply only in situations where a department of the U.S.

government, other than the OIJA itself, is the agency to be served.  The Magistrate Judge posited

that if Koch were attempting to serve Venezuela's Ministry of Defense, "transmission of the

documents to the Ministry of Foreign Affairs would not suffice, just as a request to serve the

U.S. Department of Treasury would not be effected by mailing litigation documents to the OIJA,

as it is not an agent of the Department to be served."  (Op. 15 n.8, ECF No. 46.)  Presumably, if

the Department of Justice were the agency to be served, then receipt of the service request by the

OIJA would be sufficient service on the Department of Justice and the United States itself since,

according to the Magistrate Judge, receipt of the service request by the Office of Consular

Affairs, Venezuela's central authority, constituted service on the Ministry of Foreign Affairs and

Venezuela itself.  The Magistrate Judge cites no authority for adopting that interpretation of the

United States' position, and that view is contrary not only to how service under the Hague

Convention is supposed to work, but also to how the FSIA envisions service on a foreign state.

Under the Hague Convention, a central authority is merely a repository for receiving and

a conduit for processing "requests for service."  Hague Convention, art. 2.  The only role for the

central authority contemplated under the Convention is to arrange to have the judicial documents

served in a manner authorized by the requested state's internal law.  Hague Convention, art. 5.

The notion that the central authority itself can be "served," or that it can be treated as the state's

agent for service of process, is nowhere to be found in the Convention.  The fact that a central

authority may be housed in an office of the Ministry of Foreign Affairs (or an office of the

Department of Justice) does not mean that it automatically becomes an authorized agent for

---

[20] *Id.* at 1.

accepting service of process on behalf of that department or the government at large.  It would certainly be news to the more than seventy contracting states, including the United States, to learn that, by signing the Hague Convention, they have agreed to accept service of process on themselves by simply having a package delivered to their central authority and that service could be proven merely by producing a private courier's shipping receipt.[21]

Moreover, there is no basis to conclude, as the Magistrate Judge did, that the Ministry of Foreign Affairs is the relevant agency to be served in this case.  (*See* Op. 15 n.8, ECF No. 46.) The only governmental agency that represented Venezuela in the underlying arbitration is the Office of the Attorney General of the Republic (*Procuraduría General de la República*). (Award ¶ 1.8, ECF No. 1-1.)  Koch thus had an obligation to serve the Office of the Attorney General, not the Ministry of Foreign Affairs or the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares* as requested on Koch's USM-94 forms. The Office of the Attorney General also has a different mailing address than the one supplied by Koch for the party to be served (*supra*, n.6).  *See Diz*, 611 So. 2d at 19-20.  It is of no moment that Koch listed the *Ministerio del Poder Popular para Relaciones Exteriores Oficina de Relaciones Consulares* on its papers in the caption for this action.

The Magistrate Judge seemed to find it relevant that Venezuela had designated an office at the Ministry of Foreign Affairs as its central authority in light of a separate provision of the FSIA, section 1608(a)(3), which permits service by mail directly to "the head of the ministry of foreign affairs."  (*See* Op. 14 n.7, ECF No. 46.)  That provision, which applies only when the prior two methods of service are unavailable or unsuccessful, has nothing to do with serving

---

[21] The vast majority of states party to the Hague Convention have designated a governmental agency such as an office of the ministry of foreign affairs or the ministry of justice as their central authority under the Convention. *See generally* HCCH, *Authorities*, *available at* https://www.hcch.net/en/instruments/conventions/authorities1/?cid=17 (last visited Jan. 6, 2021).

process in accordance with the Hague Convention under section 1608(a)(2).  Under section

1608(a)(3), the clerk of the court must send a different set of documents in a mailing addressed

to the "head of the ministry of foreign affairs" at the foreign minister's principal office in the

foreign state.  *Harrison*, 139 S. Ct. at 1054, 1057; *Barot v. Embassy of Zambia*, 785 F.3d 26, 27,

29 (D.D.C. 2015).  A mailing by the plaintiff addressed to the *Ministerio del Poder Popular para*

*Relaciones Exteriores Oficina de Relaciones Consulares* would be defective service under that

provision as well.

　　　　Even if Koch were correct that mailing papers to the central authority is sufficient where

the state itself is the party to be served, that would still be ineffective service as to Venezuela.

Article 10(a) of the Hague Convention does not permit service by mail on anyone in a

contracting state where that state has objected to service by mail, as Venezuela has done.[22]

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017).  The United States has also taken the

position that serving a foreign sovereign by mail is never effective, even in the absence of an

objection under the Hague Convention, unless that state has expressly consented to that method

of service.  U.S. Amicus Brief 19 n.6, *Water Splash*, No. 16-254 (U.S. Jan. 2017),

https://www.justice.gov/sites/default/files/osg/briefs/2017/01/25/16-254tsacwater_splash.pdf;

Statement of Interest of the United States 3-4, *Micula v. Gov't of Romania*, No. 17-cv-2332

(APM) (D.D.C. July 13, 2018) [attached as Exhibit A to the Republic's Opening Brief, ECF No.

30-2].[23]  There is simply no set of circumstances in which mail directly to the Ministry of

People's Power of Foreign Affairs Office of Consular Affairs could be effective service on

Venezuela under the Hague Convention or the FSIA.

---

[22] HCCH, Declarations and Reservations of Venezuela, at ¶ 3, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=429&disp=resdn (last visited Jan. 6, 2021).

[23] Accordingly, the United States does not consent to service of process upon itself by postal channels, even though it has not objected to service by mail under the Hague Convention.  U.S. Amicus Brief, *Water Splash*, at 19 n.6; Statement of Interest of the United States, *Micula*, at 3.

The Magistrate Judge reasoned that Koch's shipments via FedEx did not fall within the Hague Convention's mail provision because Koch sent the packages to Venezuela's central authority, as opposed to mailing them directly to the agency being served, and so Koch was actually attempting service "through the Central Authority."  (Op. 17-18, ECF No. 46.)  It is difficult to square that reasoning with the Magistrate Judge's determination that, because Venezuela's central authority is housed in the Ministry of Foreign Affairs, delivery of the service request to the central authority constitutes service of process *directly* on Venezuela itself.  Koch should not be allowed to conflate delivery to Venezuela's central authority with service directly on Venezuela under the Hague Convention, while at the same time being allowed to circumvent the Hague Convention's restrictions on service directly by mail by pretending that it is serving Venezuela "through the Central Authority."  (*Id*.)

Finally, the Magistrate Judge misapprehended Venezuela's argument on the significance of the political situation in Venezuela and the United States' response.  Following the United States' recognition of the Guaidó government as the only legitimate government of Venezuela, any further steps to complete service through Venezuela's central authority at the Maduro-controlled Ministry of Foreign Affairs in Caracas are meaningless as a matter of U.S. foreign relations law, because recognizing the acts of the Maduro regime would undermine the Executive Branch's exclusive power to recognize foreign governments.  *See Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2090-91 (2015); *Pfizer v. Government of India*, 434 U.S. 308, 319-20 (1978); *Guar. Tr. Co. v. United States*, 304 U.S. 126, 138 (1938); *Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *17 (Del. Ch. Aug. 2, 2019).  In effect, as far as the United States is concerned, there is presently no recognized "central authority" and no one in Caracas to be served on behalf of the Republic.

Even if the Magistrate Judge were correct that service on the Republic was completed before the political transition began to take shape in Venezuela, Koch's total disregard for the legal consequences of the United States' recognition of the Guaidó government should not be rewarded.  Koch's sudden rush to request and obtain a clerk's entry of default after the United States recognized the Guaidó government—even though several months had passed since Venezuela had supposedly defaulted—demonstrates a lack of good faith, a duty that plaintiffs must uphold when attempting to serve a foreign state.  *See Barot*, 785 F.3d at 27, 29; *O'Bryan v. Holy See*, 549 F.3d 431, 441 (6th Cir. 2008).  Koch had a good faith obligation not only to comply with the FSIA's and the Hague Convention's requirements but also—and more importantly—to ensure that it had served and put on notice the only recognized Venezuelan authority with standing to appear in U.S. courts:  the Guaidó government.

As a matter of settled law, representatives of the Maduro regime, which controls the Ministry of Foreign Affairs in Caracas, cannot appear in these proceedings following the U.S. Executive Branch's recognition of the Guaidó government.  *See Rusoro*, 2019 U.S. App. LEXIS 17543 at *2-3; *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128, at *14 (D.D.C. May 21, 2019) (holding that attorneys acting at the direction of the Maduro regime lacked standing to appear on behalf of the Republic); *see also Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 675-76 (S.D. Fla. 1988); *Republic of Panama v. Republic Nat'l Bank of New York*, 681 F. Supp. 1066, 1073 (S.D.N.Y. 1988); *Republic of Panama v. Citizens & S. Int'l Bank*, 682 F. Supp. 1544, 1546 (S.D. Fla. 1988).  It strains credulity to think that Koch believed that the Guaidó government could be properly served with process and put on notice of judicial proceedings through the Maduro-

controlled central authority in Caracas.[24]  That sort of litigation conduct in and of itself warrants

dismissal of the case.  *See Chiang v. United States SBA*, 331 F. App'x 113, 115 (3d Cir. 2009)

(finding that plaintiff lacked a good faith basis for failing to properly serve, and dismissing the

complaint for insufficient service).

In sum, the Republic has not yet been served under the FSIA and so this Court lacks

personal jurisdiction.

## <u>CONCLUSION</u>

For these reasons, this Court should grant Venezuela's motion to dismiss this case for

lack of personal jurisdiction and insufficient service of process under the FSIA.

Dated:          Washington, D.C.
                January 6, 2021

                                        Respectfully submitted,

                                        CURTIS, MALLET-PREVOST,
                                        COLT & MOSLE LLP

                                        By:  */s/ Joseph D. Pizzurro*
                                        Joseph D. Pizzurro
                                        (D.C. Bar No. 468922)
                                        Kevin A. Meehan
                                        (D.C. Bar No. 1613059)
                                        1717 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        Tel.:  (202) 452-7373
                                        Fax:  (202) 452-7333
                                        Email:  jpizzurro@curtis.com
                                        Email: kmeehan@curtis.com

                                        *Attorneys for Defendant*
                                        *Bolivarian Republic of Venezuela*

---

[24] Koch's counsel again manifested the same sort of bad faith when he misrepresented to Magistrate Judge Faruqui that Koch had raised and argued Venezuela's supposed waiver of an objection to a magistrate judge's jurisdiction.