**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KOCH MINERALS SÀRL,
KOCH NITROGEN INTERNATIONAL SÀRL,

*Plaintiffs*,

v.

Case No. 17-cv-02559-KBJ

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant*.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro
(D.C. Bar No. 468922)
Kevin A. Meehan
(D.C. Bar No. 1613059)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
Email: jpizzurro@curtis.com
Email: kmeehan@curtis.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

Dated: Washington, D.C.
        January 27, 2021

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................4

I.    There Can Be No Implied Consent to a Magistrate Judge's Jurisdiction In Light of
      the Parties' Undisputed Stipulation that Venezuela Did Not Consent to Such
      Jurisdiction ........................................................................................................4

II.   Delivery of a FedEx Package to the Central Authority Requesting Service on the
      Central Authority Is Defective Service under the Hague Convention and the FSIA ..............8

CONCLUSION...........................................................................................................16

## **TABLE OF AUTHORITIES**

**Pgs.**

**Cases**

*Box v. Dallas Mexican Consulate Gen.*,
    487 F. App'x 880 (5th Cir. 2012) ....................................................................... 11

*\*Cavic v. Republic of Serbia*,
    No. 16-cv-1910-JLS-KESx, 2018 U.S. Dist. LEXIS 226683 (C.D. Cal. Mar.
    21, 2018) ............................................................................................................. 10

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
    No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019) ..................... 14

*Fallman v. Hotel Insider, Ltd.*,
    No. 14cv10140 (DLC), 2016 U.S. Dist. LEXIS 140158 (S.D.N.Y. Oct. 7, 2016)..................... 8

*Lopez v. Holder*,
    563 F.3d 107 (5th Cir. 2009 ............................................................................... 6

*\*Mezerhane v. República Bolivariana de Venezuela*,
    No. 11-23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802 (S.D.
    Fla. Mar. 19, 2013), *aff'd*, 785 F.3d 545 (11th Cir. 2015)....................................... 10

*\*Nw. Aluminum Co. v. VAW Aluminum, A.G.*,
    No. 02-398-JE, 2002 U.S. Dist. LEXIS 27485 (D. Or. Oct. 28, 2002) ...................... 8, 10, 14

*Practical Concepts, Inc. v. Republic of Bolivia*,
    811 F.2d 1543 (D.C. Cir. 1987)........................................................................... 15

*\*Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019)........................................................................... 2, 11, 12, 15

*Rodrigues v. Corona Advances, Inc.*,
    No. 15-CV-6815 (BCM), 2018 U.S. Dist. LEXIS 144532 (S.D.N.Y. Aug. 24,
    2018) ..................................................................................................................... 6

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
    No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) ...................... 7

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    30 F.3d 148 (D.C. Cir. 1994)............................................................................... 15

*\*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    608 F.3d 871 (D.C. Cir. 2010)............................................................................. 4

*Venice Pi, LLC v. Galbatross Techs., LLP*,
    No. 18-00192 LEK-RT, 2019 U.S. Dist. LEXIS 224805 (D. Haw. June 28,
    2019) ................................................................................................................... 14

*Verkouteren v. District of Columbia*,
    346 F.2d 842 (D.C. Cir. 1965).............................................................................. 4

*\*Water Splash, Inc. v. Menon*,
    137 S. Ct. 1504 (2017)........................................................................................ 11

*Winston v. Walsh*,
No. 20-11614, 2020 U.S. App. LEXIS 31219 (11th Cir. Oct. 1, 2020) .............................. 9, 14

**Statutes**

28 U.S.C. § 1330(b) ........................................................................................................ 1, 15

28 U.S.C. § 1608(a) ................................................................................................... 1, 13, 15

28 U.S.C. § 636(c) ............................................................................................................. 6, 7

**Rules**

Fed. R. Civ. P. 12(b)(2) .......................................................................................................... 1

Fed. R. Civ. P. 12(b)(5) .......................................................................................................... 1

Fed. R. Civ. P. 4 ................................................................................................................... 12

Fed. R. Civ. P. 73(b) .............................................................................................................. 7

LCvR 73.1(b) .......................................................................................................................... 7

**Other Authorities**

9 WIGMORE, EVIDENCE § 2588 (Chadbourn rev. 1981) ......................................................... 4

Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters, Nov. 15, 1965,
20 U.S.T. 361, 658 U.N.T.S. 163 ................................................................................ passim

U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial*
*Documents on the United States Government Pursuant to the Hague Service*
*Convention* (Jan. 12, 2018) ............................................................................................ 11

Defendant Bolivarian Republic of Venezuela submits this reply in support of its Objections to the Magistrate Judge's Proposed Findings and Recommendations improperly issued as a Memorandum Opinion and Order denying Venezuela's motion to dismiss pursuant to Federal Rules 12(b)(2) and (5) for lack of personal jurisdiction and insufficient service of process under the FSIA, 28 U.S.C. §§ 1330(b) and 1608(a).[1]

## PRELIMINARY STATEMENT

Koch has finally admitted that it did not contest Venezuela's objection to a magistrate judge's all-purpose jurisdiction or argue that Venezuela had waived the right to object to such jurisdiction before Magistrate Judge Robinson, as Koch's counsel had misrepresented to Magistrate Judge Faruqui when he first took over this case.  *See* Pls.' Br. 4 n.2, ECF No. 49.  Koch also does not and cannot deny that, once Venezuela appeared, the parties stipulated that Venezuela did not consent to a magistrate judge's jurisdiction.  Joint Status Report 2, ECF No. 34.  That stipulation explains why the parties never litigated this issue until after Koch's counsel created the misimpression that it was a live issue before Magistrate Judge Faruqui.

Although Koch's counsel now regrets this "unintended error," Pls.' Br. 4 n.2, ECF No. 49, it is noteworthy that Koch failed to clarify the record on the multiple occasions it could have done so, including after Venezuela pointed out the falsity of that statement and the existence of the parties' stipulation in its second supplemental brief.  It is difficult to conceive that Magistrate Judge Faruqui would have exerted all-purpose jurisdiction over this case had Koch's counsel forthrightly admitted that the parties had stipulated that Venezuela had not consented to the Magistrate Judge's jurisdiction and that Koch had never disputed Venezuela's right to withhold

---

[1] Acronyms and abbreviations not otherwise defined herein have the same meanings attributed to them in the Republic's Objections (ECF No. 48).

consent or argued that Venezuela had somehow waived the right to object.  In short, given these undisputed facts, there can be no implied consent on the part of Venezuela.

Furthermore, it is now clear that Venezuela was under no obligation to appear and defend this action because it was not properly served.  *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019).  Koch's response confirms the fatal defect in its service attempts: Koch requested service on the wrong governmental agency—not once, but twice—and thus service was defective before the FedEx packages even left the United States.  Koch does not deny that the only governmental agency involved in representing Venezuela in the underlying arbitration was the Office of the Attorney General of the Republic.  Nor does Koch contend that it ever requested service on that office or that any judicial documents were actually delivered there.  In effect, Koch never served a governmental agency authorized to receive service of process on behalf of the Republic.

Rather, Koch insists that it can serve the Republic merely by sending a FedEx package to Venezuela's central authority under the Hague Convention, the Ministry of People's Power of Foreign Affairs Office of Consular Affairs, requesting that the central authority "serve" itself. According to Koch, Venezuela's designation of a central authority under the Convention means that the central authority should be treated as if it were an authorized agent to accept service of process directly on behalf of the Republic in any and all actions governed by the Convention. Yet Koch is unable to point to any provision in the Hague Convention that requires a central authority to act as a receiving state's agent for service of process.  That's because there is none; a central authority functions only as a conduit for receiving and processing "*requests* for service." Hague Convention art. 2 (emphasis added).  There is no support in the Convention for the notion that a contracting state must ignore the Convention's requirements and accept service of process

directly by mail at its central authority when the state itself is being sued.  Nor can Koch identify any Venezuelan law that, consistent with Article 5 of the Convention, authorizes service on the Republic by mail directly to its central authority.  To the contrary, Venezuela has objected to any service by mail under the Hague Convention.

Venezuela's position is not unique.  It is consistent with the United States' understanding of its own international obligations under the Hague Convention, a view with which Koch does not take issue.  As the United States has made clear, delivery of a service request to the U.S. central authority, which is housed in an office of the Department of Justice, does not by itself constitute service on the U.S. government in any case.  A service request must identify the appropriate government office or agency to be served, and service is deemed completed only when the authorized officials receive the judicial documents by a method prescribed by the United States' internal law pursuant to Article 5 of the Hague Convention.  The same procedures apply when serving Venezuela under the Hague Convention—nothing more, nothing less.

Because the record establishes that Koch requested service on the wrong governmental agency and so its service requests were defective from the start, it is immaterial whether Koch received a certificate of service from Venezuela's central authority.  Nor does it matter that Koch sent its defective service requests to the central authority before the United States recognized the Guaidó administration as the only legitimate government of Venezuela.  Simply put, there is no set of circumstances under which Koch's requests to "serve" the central authority itself, rather than the Office of the Attorney General, can be effective service on the Republic under the Hague Convention or the FSIA.  This case should thus be dismissed for ineffective service of process and lack of personal jurisdiction.

## ARGUMENT

**I.    There Can Be No Implied Consent to a Magistrate Judge's Jurisdiction In Light of the Parties' Undisputed Stipulation that Venezuela Did Not Consent to Such Jurisdiction**

There is no dispute that, absent effective service of process, Venezuela could not have impliedly consented to a magistrate judge's jurisdiction by appearing in these proceedings after the clerk's entry of default.  Nor is there any dispute that, when a magistrate judge purports to enter a final decision without a party's consent, a district court judge must either vacate the magistrate judge's decision and decide the motion anew or review the magistrate judge's decision *de novo* as if it were a report and recommendation.  Thus, given that Venezuela was never served, as set forth below, the District Court Judge must proceed under one of these options and take the case back from the Magistrate Judge.

That is also the proper course regardless of whether this Court agrees with the Magistrate Judge's conclusion on service of process.  Koch does not challenge the fact that, once Venezuela appeared, the parties *stipulated* that only Koch "consented to a magistrate judge conducting all proceedings in this case" and that "[a]t no point ha[d] Venezuela provided such consent."  Joint Status Report 2, ECF No. 34.  That stipulation foreclosed any litigation over the Magistrate Judge's jurisdiction and precluded Koch from raising and arguing this issue.

"Stipulations of fact bind the court and parties."  *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 889 (D.C. Cir. 2010); *see also Verkouteren v. District of Columbia*, 346 F.2d 842, 844 n.2 (D.C. Cir. 1965) (noting "the importance and significance which courts customarily attach to stipulations of fact" and their "binding effect").  "Once a stipulation of fact is made," the party relying on that fact does not need to marshal "evidence to prove it and the other is not allowed to disprove it."  *Miller*, 608 F.3d at 889 (quoting 9 WIGMORE, EVIDENCE § 2588 (Chadbourn rev. 1981)).

This Court must enforce the parties' undisputed stipulation.  Up until the first status conference with Magistrate Judge Faruqui, everyone including Magistrate Judge Faruqui understood that Venezuela did not consent to a magistrate judge's jurisdiction and that the case was before the Magistrate Judge for a report and recommendation, notwithstanding the District Court Judge's endorsement of Koch's unilateral notice of consent before Venezuela appeared. (Minute Order 8/5/2019; Minute Order 11/21/2019; Tr. 12/10/2019 at 18:4-6, ECF No. 38; Tr. 10/13/2020 at 3:4-11, ECF No. 44.)  It was not until Koch's counsel told Magistrate Judge Faruqui that Koch had raised and argued before Magistrate Judge Robinson that Venezuela supposedly waived the right to object to a magistrate judge's jurisdiction that this issue became the subject of litigation.  (Tr. 10/13/2020 at 3:19-4:16, ECF No. 44.)

Koch's counsel acknowledges as much when it expresses regret for this "unintended error."  Pls.' Br. 4 n.2, ECF No. 49.  Counsel's newfound regret cannot salvage Koch's argument or the Magistrate Judge's assertion of jurisdiction.  If Koch's counsel truly regretted his misstatement about his own prior conduct in this litigation, one would expect counsel to have immediately apprised the court of the misstatement and the parties' stipulation as soon as he had the opportunity to do so consistent with his duty of candor, for instance, in the subsequent supplemental submission ordered by Magistrate Judge Faruqui on this very issue or after Venezuela pointed out that counsel's representation was demonstrably false in its supplement brief.  *See* Def.'s Second Suppl. Br. 1, 4-5, ECF No. 42.

Instead, Koch rested on its misrepresentation, leaving Magistrate Judge Faruqui with the misimpression that Venezuela's lack of consent was an open question.  No major leap is required to imagine that Magistrate Judge Faruqui could have reached a different conclusion on the scope of his jurisdiction had Koch's counsel candidly advised him that the parties had stipulated that

Venezuela had not consented to a magistrate judge's all-purpose jurisdiction and that counsel had never argued that Venezuela had waived its right to object to such jurisdiction.  It is baffling that Koch continues to press this issue before this Court in the face of counsel's admission and in disregard of the parties' undisputed stipulation—requiring the Court and Venezuela to expend precious additional resources on litigating a stipulated fact.

Koch makes much of the District Court Judge's endorsement of Koch's unilateral notice of consent to a magistrate judge's all-purpose jurisdiction before Venezuela appeared.  But, to be effective, an order referring a matter to a magistrate judge for all purposes requires the mutual consent of the parties, which was not and could not have been obtained from Venezuela in its absence.  *See Lopez v. Holder*, 563 F.3d 107, 111 (5th Cir. 2009) ("[I]n order for a magistrate judge to exercise jurisdiction under § 636, there must be both consent and a referral order from the district judge."); *Rodrigues v. Corona Advances, Inc.*, No. 15-CV-6815 (BCM), 2018 U.S. Dist. LEXIS 144532, at *7-8 (S.D.N.Y. Aug. 24, 2018) (holding that referral to magistrate judge without affirmative consent of all parties, including a defaulting party, did not vest the magistrate judge with jurisdiction and that consent could not be "inferred from [the defaulting defendant's] conduct, since it was not present before the Court at any time during the life of this action").

In any event, a district court is not hamstrung by its own referral order.  A referral to a magistrate judge may be retracted *sua sponte* at any time by a district court judge for good cause. 28 U.S.C. § 636(c)(4).  In fact, the record indicates that both Magistrate Judges in this case were proceeding on the understanding that the matter was before them for report and recommendation following Venezuela's appearance and objection, and Magistrate Judge Faruqui went so far as to note that the District Court Judge had been informed that the case was not before him on consent. (Tr. 12/10/2019 at 18:4-6, ECF No. 38; Tr. 10/13/2020 at 3:4-11, ECF No. 44.)

It also bears noting that Koch's filing of the notice of consent directly on the court's docket was procedurally improper.  *See* Docket Entry No. 27.  The Federal Rules and this Court's Local Rules both provide for confidentiality of a parties' decision to withhold consent.  *See* FED. R. CIV. P. 73(b)(1) ("A district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral."); *see also* Notice of Consent, ECF No. 27 ("The name of any party withholding consent will not be revealed to any judge who may otherwise be involved in the case.").  Accordingly, the parties are instructed to "[r]eturn [the notice of consent] to the clerk of the court" and directed to "not return this form to a judge."  Notice of Consent, ECF No. 27 (Note); *see* 28 U.S.C. § 636(c)(2) ("The decision of the parties shall be communicated to the clerk of court."); LCvR 73.1(b) ("[A] notice of consent signed by the parties or their attorneys shall be filed with the Clerk.").  Yet, again, Koch followed its own rules and filed its unilateral notice of consent directly on the court's docket for the judges assigned to the case to see.

Perhaps this was another unintentional mistake on the part of Koch's counsel or part of a broader pattern of ill-advised litigation tactics like failing to dispel the misimpression he created about Venezuela's supposed waiver of the right to object to a magistrate judge's jurisdiction and seeking a clerk's entry of default after the United States recognized interim President Guaidó as the only legitimate leader of Venezuela without as much as the courtesy of putting the Guaidó administration on notice of these proceedings, knowing full well that representatives of the Maduro regime lacked standing to appear on behalf of the Republic in U.S. courts.  *See Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, 2019 U.S. App. LEXIS 17543, at *1 (D.C. Cir. May 1, 2019); *see also* Obj. 5, 30-32, ECF No. 48.

In brief, putting aside this dubious litigation conduct, there is no basis to find that Venezuela implicitly consented to the Magistrate Judge's jurisdiction.

## II.    Delivery of a FedEx Package to the Central Authority Requesting Service on the Central Authority Is Defective Service under the Hague Convention and the FSIA

Koch's attempts to serve Venezuela under the Hague Convention and the FSIA were defective because Koch requested service on the wrong governmental agency.  Koch does not and cannot deny that the Office of the Attorney General of the Republic was the only governmental agency authorized to represent Venezuela in the underlying dispute.  (*See* Award ¶ 1.8, ECF No. 1-1.)  Nor does Koch contend that it ever attempted to serve that office by any method allowed under the Hague Convention or the FSIA.  Rather, Koch requested service on a different governmental agency, the Ministry of People's Power of Foreign Affairs Office of Consular Affairs, at an address that is different from the address for the Office of the Attorney General.[2]  (Aff. of Service, Ex. 1 at 2, ECF No. 21-2; Aff. of Service, Ex. 4 at 2, ECF No. 21-5.)

Consequently, Koch's failure to request service on the appropriate governmental agency at the correct address rendered its service attempts ineffective right out of the gate.  *See Fallman v. Hotel Insider, Ltd.*, No. 14cv10140 (DLC), 2016 U.S. Dist. LEXIS 140158, at *9, *11-12 (S.D.N.Y. Oct. 7, 2016) (dismissing action for ineffective service where plaintiff failed to identify the correct address to be served and failed to cure the obvious mistake in a timely manner, stating "this error is not a mere technicality, but is material; purported service at the wrong address is not service" under the Hague Convention); *Nw. Aluminum Co. v. VAW Aluminum, A.G.*, No. 02-398-JE, 2002 U.S. Dist. LEXIS 27485, at *5 (D. Or. Oct. 28, 2002)

---

[2] *Compare* ICSID Award Notification Letter 2, ECF No. 1-1 (Address for the Attorney General: "Av. Los Ilustres, c/c calle Francisco Lazo Martí, Edif. Procuraduría General de la Rep., Piso 8, Urb. Santa Monica Caracas 1040, Venezuela"), *with* Aff. of Service, Ex. 1 at 2, ECF No. 21-2; Aff. of Service, Ex. 4 at 2, ECF No. 21-5 (Address provided by Koch for the entity to be served on USM-94 forms: "Avenida Urdaneta, Esquina Carmelitas a Puente Llaguno, Torre Anexo a Torre MRE Piso 1, Caracas, 1010.").

(rejecting service attempt under the Hague Convention because "the wrong person was served at the wrong address"); *see also Winston v. Walsh*, No. 20-11614, 2020 U.S. App. LEXIS 31219, at *5-6 (11th Cir. Oct. 1, 2020) (per curiam) ("It is the plaintiff's—not the Central Authority's—responsibility to find the correct address of a defendant.").

In an attempt to avoid the consequences of this elementary mistake, Koch fabricates from whole cloth the notion that it was "obligated under the Hague Convention to *serve* the Foreign Ministry as Venezuela's designated Central Authority," instead of the Office of the Attorney General, which was the only governmental agency authorized to represent Venezuela in this case. Pls.' Br. 13, ECF No. 49 (emphasis added); *see also* Pls.' Br. 7, ECF No 49. Koch then repeatedly incants the word "serve" to describe the delivery of the FedEx packages containing the service requests to Venezuela's central authority as if it were a foregone conclusion that a state could be "served" directly by mail or private courier to its central authority. It cannot.

As Koch recognizes, the Hague Convention was designed for serving process on third parties and does not contemplate different procedures for serving the state itself. *See* Pls.' Br. 8, 14, ECF No. 49. Articles 2 and 5 expressly state that the role of the central authority is limited to receiving "*requests* for service" and then "arrang[ing]" to have the judicial documents served "by a method prescribed by [the receiving state's] internal law for the service of documents in domestic actions" or by another method consistent with that state's "internal law." Hague Convention arts. 2, 5(a)-(b) (emphasis added); *see Winston*, 2020 U.S. App. LEXIS 31219, at *5-*6 (looking to the Civil Procedure Rules of England and Wales in determining whether service in the United Kingdom had been effected pursuant to Article 5 of the Hague Convention).

The notion that a central authority must accept service directly on behalf of a state, or that it can be treated as the state's agent for service of process, is nowhere to be found in the Hague

Convention.  That the Hague Convention was intended for serving third parties in a contracting

state's territory, as Koch emphasizes, further highlights the fact that the Convention does not

anticipate a situation in which the central authority is acting as a process agent for the state itself.

Simply put, there is no such thing as "service upon [a contracting state's] designated central

authority."  Pls.' Br. 1, ECF No. 49.

  Indeed, courts have held that delivery of a service request to the central authority is only

the first step in serving process under the Convention, including when the state itself is being

sued.  To complete service, the central authority must arrange to have the documents served on

the proper authorities in a manner authorized by or consistent with the state's internal law.  *See,*

*e.g.*, *Cavic v. Republic of Serbia*, No. 16-cv-1910-JLS-KESx, 2018 U.S. Dist. LEXIS 226683, at

*7 (C.D. Cal. Mar. 21, 2018) ("[T]he arrival of [Plaintiff's] request for service at the [Serbian]

Ministry of Justice . . . does not constitute service on Serbia itself.  The arrival of the papers at

the Ministry of Justice is a 'request for service;' service must then be effectuated by the Ministry

upon the parties within Serbia."); *Mezerhane v. República Bolivariana de Venezuela*, No. 11-

23983-CIV-COOKE/TURNOFF, 2013 U.S. Dist. LEXIS 196802, at *4-5, *10 (S.D. Fla. Mar.

19, 2013), *aff'd*, 785 F.3d 545 (11th  Cir. 2015) (finding that transmission of the papers to the

Venezuelan central authority did not complete service on the Venezuelan government itself, and

noting that the central authority was still in the process of attempting service in accordance with

Venezuela's internal procedures).  And a service request is defective when, as here, the plaintiff

does not identify the proper authorities or address to be served.  *See Nw. Aluminum*, 2002 U.S.

Dist. LEXIS 27485, at *5.

  Furthermore, Venezuela's objection to service by postal channels under the Hague

Convention defeats any attempt to serve the Republic directly by mail or private courier at any

location, including at its central authority.  *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504,

1513 (2017) ("[I]n cases governed by the Hague Service Convention, service by mail is

permissible if two conditions are met: first, the receiving state has not objected to service by

mail; and second, service by mail is authorized under otherwise-applicable law.").  Koch argues

that Venezuela's objection applies only to service on third parties, but nothing in the Convention

exempts service on the state itself from the state's general objection to service by postal

channels.[3]  To the contrary, it is incumbent upon Koch to point to an "otherwise-applicable law"

that authorizes service by mail directly on Venezuela's central authority notwithstanding

Venezuela's general objection.  *Water Splash*, 137 S. Ct. at 1513.  There is none.

Contrary to Koch's assertion, Venezuela is not refusing to abide by its obligations under

the Hague Convention.  If that were the case, then the United States would be in violation of the

Convention as well because Venezuela's and the United States' views are consistent with each

other.  The U.S. Department of Justice has made crystal clear that the "U.S. Central Authority

receives and executes requests for service on the U.S. Government, *but the Central Authority is*

*not the legal representative or agent of the U.S. Government*."[4]  Accordingly, "receipt of a

request for service from a foreign court by the U.S. Central Authority is not effective service" on

the United States itself, and "[s]ervice is only complete upon receipt of the documents *by the*

*appropriate U.S. Government office or agency*" pursuant to Article 5 of the Hague Convention,[5]

---

[3] Koch cites *Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880 (5th Cir. 2012) (nonprecedential), for the theory that the requirements of the Hague Convention apply differently when serving a foreign state as opposed to a third party.  Pls.' Br. 8, ECF No. 49.  But, as already explained, that was not the holding in *Box*.  Furthermore, *Box*'s core holding—*i.e.*, that actual notice can cure technical defects when serving a foreign state—is no longer good law after the Supreme Court's decision in *Harrison*.  Obj. 26 n.18, ECF No. 48.

[4] U.S. Dep't of Justice, Office of Int'l Judicial Assistance, *Service of Judicial Documents on the United States Government Pursuant to the Hague Service Convention* 1 (Jan. 12, 2018) (emphasis added), *available at* https://www.justice.gov/civil/page/file/1036571/download.

[5] *Id*. at 1-2 ("Given that service is not effective upon delivery of the documents to the U.S. Central Authority, ample time needs to be given for the U.S. Central Authority to serve the appropriate U.S. Government office or agency.").  Koch ignores the United States' position and makes no effort to defend the Magistrate Judge's erroneous

even though the United States' designated central authority is an office in the Department of Justice and the U.S. Attorney General is ordinarily an appropriate authority to be served in domestic actions against the United States, *see* FED. R. CIV. P. 4(i)(1)(B).

Moreover, as previously explained, the United States does not recognize service by mail directly to any government office under any circumstances, even though, unlike Venezuela, the United States has not objected to service by postal channels under the Convention.  Obj. 29 & n.23, ECF No. 48.  In short, a plaintiff cannot simply send a FedEx package to the U.S. central authority, requesting service on the central authority itself, and then expect that the delivery of that package will be treated as "service upon [the United States'] designated central authority" and thus service upon the United States itself.  Pls.' Br. 1, ECF No. 49.  Likewise, Koch's attempts to serve Venezuela by supposedly effecting "service upon [Venezuela's] designated central authority," the Ministry of People's Power of Foreign Affairs Office of Consular Affairs rather than the appropriate authorities in the Office of the Attorney General, is ineffective service on the Republic under the Hague Convention.

Koch and the Magistrate Judge's contrary interpretation of the Hague Convention hinges on the erroneous presupposition that a central authority can be "served" when the state itself is the defendant.  Specifically, Koch believes that a foreign state is required to accept service on itself directly by private courier at its central authority and that the private courier's delivery receipt should be accepted as sufficient proof of service, effectively treating a central authority as

---

interpretation of these statements.  But this Court cannot ignore the United States' understanding of its international obligations under the Convention, because comity and reciprocity are important considerations in deciding whether Koch's service attempts are an appropriate method for serving a foreign state under the FSIA.  *See Harrison*, 139 S. Ct. at 1060-61 (noting the United States' "concern that accepting respondents' interpretation of § 1608 [of the FSIA] might imperil [the United States' own] practice" of refusing service directly at its embassies).

the foreign state's agent for service of process and a private courier like FedEx as a court-appointed process server in all cases against a foreign state that is a party to the Convention.

From that premise, Koch (and the Magistrate Judge) jump to the conclusion that, by designating the Ministry of People's Power of Foreign Affairs Office of Consular Affairs as its central authority, Venezuela somehow consented to being served directly by mail to the "Ministry of Foreign Affairs" under the Hague Convention.[6]  *See* Op. 14-15 & nn.7-8, ECF No. 46; Pls.' Br. 7-8, ECF No. 49.  To be certain, Venezuela did not designate the "Ministry of Foreign Affairs" as its central authority.  Like the United States, which designated a specific office of the Department of Justice, Venezuela specifically designated the Office of Consular Affairs to process and handle service requests.  No one at the Office of Consular Affairs is authorized to accept service of process directly on behalf of Venezuela.

The more fundamental problem with the manner in which Koch and the Magistrate Judge understand the role of a central authority is that it conflicts not only with the United States' own understanding of its obligations under the Hague Convention, but also with the express terms of the Convention itself.  Again, there is no support in the Convention for the notion that a central authority must act as a foreign state's agent for service of process, a view that the United States has explicitly rejected.  *See supra* pp. 11-12.  A party attempting to serve Venezuela, like a party attempting to serve the United States, must identify the appropriate government office or agency

---

[6] The Magistrate Judge further rationalized his belief that it was appropriate to serve the Ministry of Foreign Affairs by noting that a separate provision of the FSIA, 28 U.S.C. § 1608(a)(3), indicates that a plaintiff must serve the "head of the ministry of foreign affairs," and concluding that this provision applies when "the defendant is the foreign state itself—rather than a specific department or ministry" because the ministry of foreign affairs is "the department most likely to understand American procedure."  Op. 10, 14 n.7, ECF No. 46 (citation omitted).  It bears repeating that section 1608(a)(3) is not relevant here, because it has nothing to do with the Hague Convention and Koch could not rely on that provision anyway.  Obj. 28-29, ECF No. 48.  The various service methods in section 1608(a) are strictly hierarchical; a plaintiff cannot use a subsequent method unless the antecedent method has failed or is otherwise unavailable.  A plaintiff cannot pick and choose from the requirements of different FSIA provisions to cobble together its preferred method for serving a foreign state.

to be served in accordance with the requirements "for service of documents in domestic actions" or by another method consistent with that state's "internal law."  Hague Convention art. 5(a)-(b). Neither Koch nor the Magistrate Judge has identified any Venezuelan law that authorizes service on the Republic directly by private courier to the Ministry of People's Power of Foreign Affairs Office of Consular Affairs.  A request to "serve" that office is therefore inherently defective under the Hague Convention.[7]

Given Koch's failure to request service on the appropriate governmental authorities—not once, but twice—Koch's service attempts could not have resulted in effective service on the Republic under any circumstances.  It is thus irrelevant that Koch has not received an executed certificate of service issued by Venezuela's central authority.[8]  *See, e.g.*, *Winston*, 2020 U.S. App. LEXIS 31219, at *8 (finding ineffective service, even though U.K. central authority had returned an executed certificate of service, because the plaintiff had requested service at the wrong address); *Nw. Aluminum*, 2002 U.S. Dist. LEXIS 27485, at *5 (disregarding German central authority's executed certificate of service where the record suggested that "the wrong person was served at the wrong address").  Nor does it matter that Koch's service requests were delivered to the central authority before the United States recognized the Guaidó administration as the only legitimate government of Venezuela.  In no other context would requesting service on an *unauthorized* agent for service of process constitute effective service on a defendant, and

---

[7] The decision in *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167, at *30 (D. Del. Dec. 12, 2019), turned on the same flawed premise that a central authority itself can be "served."

[8] In any event, were this Court to accept Koch's excuse for failing to follow up with Venezuela's central authority on grounds that it sent two distinct service requests (one for the original complaint and a second for the amended complaint), the "reasonable effort" requirement would be rendered meaningless.  Indeed, a court recently rejected that very excuse.  *See Venice Pi, LLC v. Galbatross Techs., LLP*, No. 18-00192 LEK-RT, 2019 U.S. Dist. LEXIS 224805, at *5 (D. Haw. June 28, 2019) (denying motion for alternative service after plaintiffs had attempted to serve defendants twice under the Hague Convention with no success, noting that "Plaintiffs have not discussed whether they have followed up with the Central Authority of India to check on the status of their service request").

there is no good reason to carve out an exception in actions against a foreign state when important comity and foreign relations concerns are at stake.  *See Harrison*, 139 S. Ct. at 1061-62.

Koch's attempt to invent a new method for serving a foreign state (and the Magistrate Judge's endorsement of that approach) also runs headlong into the FSIA's exclusive methods of service.  *Id*. at 1053-54, 1062; *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).  Section 1608(a) does not authorize service by private courier directly to a foreign state's central authority or the Ministry of People's Power of Foreign Affairs Office of Consular Affairs.  Koch's slapdash service attempts are thus invalid under the FSIA.[9]

In sum, Koch's novel theory of service does not accord with the Hague Convention or the FSIA.  Therefore, unless and until Koch serves the appropriate governmental authorities, service cannot be deemed to have been effected on the Republic under the FSIA.  Given Koch's lack of diligence and good faith in effecting proper service, combined with its lack of candor and other misguided litigation tactics, this case should be dismissed for lack of personal jurisdiction and ineffective service of process.[10]

---

[9] Koch rings a false alarm by claiming that foreign states will be able to "unilaterally prevent perfection of service by simply refusing to 'serve itself'" if all the Hague Convention's requirements are applied strictly to service on a foreign state.  Koch fails to appreciate that, under the Convention, contracting states actually have the right to refuse service in certain circumstances.  *See* Hague Convention arts. 4, 13.  Regardless, any risk of "non-compliance" is illusory because the FSIA provides four methods in hierarchical order for serving a foreign state.  If a method fails or is otherwise unavailable, a plaintiff may proceed to the next available method until service of process is perfected. *Harrison*, 139 S. Ct. at 1054.  Koch could thus easily cure its defective service attempts by serving the appropriate authorities under the next applicable method of service, namely diplomatic channels under 28 U.S.C. § 1608(a)(4). Had Koch done this two years ago, when the United States recognized the Guaidó administration as the only legitimate government of Venezuela, Koch could have avoided the supposed delays that it complains of now.  No amount of posturing about Venezuela's "litigation tactics" or "belated appearance" can excuse Koch's failure to serve an appropriate governmental agency.  As the Supreme Court recently held in *Harrison*, any complaints of delay are irrelevant when a plaintiff has not adhered strictly to the FSIA's service provisions.  139 S. Ct. at 1062.

[10] Under the FSIA, a district court also lacks personal jurisdiction over a foreign state unless service of process has been effected pursuant to section 1608(a).  28 U.S.C. § 1330(b); *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987).

## <u>CONCLUSION</u>

For these reasons, this Court should dismiss this case for insufficient service of process and lack of personal jurisdiction under the FSIA.


Dated:          Washington, D.C.
                January 27, 2021

                                        Respectfully submitted,


                                        CURTIS, MALLET-PREVOST,
                                        COLT & MOSLE LLP

                                        By:  /s/ Joseph D. Pizzurro
                                        Joseph D. Pizzurro
                                        (D.C. Bar No. 468922)
                                        Kevin A. Meehan
                                        (D.C. Bar No. 1613059)
                                        1717 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        Tel.: (202) 452-7373
                                        Fax: (202) 452-7333
                                        Email: jpizzurro@curtis.com
                                        Email: kmeehan@curtis.com

                                        *Attorneys for Defendant*
                                        *Bolivarian Republic of Venezuela*