IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL,

*Plaintiffs*,

*v.*

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant*.

Civil Action No: 17-cv-02559- ZMF

**PLAINTIFFS KOCH MINERALS SÀRL AND KOCH NITROGEN INTERNATIONAL SÀRL'S MEMORANDUM IN SUPPORT OF THEIR <u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

**BACKGROUND** ................................................................................................................................ 1

**ARGUMENT** .................................................................................................................................... 4

    I.      Section 1650a Requires The Court To Enforce An ICSID Award And Give It Full Faith And Credit. .................................................................................. 4

    II.     The Court Has Personal Jurisdiction Over Venezuela. ........................................... 6

    III.    The Court Has Subject Matter Jurisdiction. ............................................................ 6

    IV.    No Other Grounds Exist To Deny Enforcement Of The Award. ........................... 8

**CONCLUSION** ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page(s)**

*Blue Ridge Invs., L.L.C. v. Republic of Arg.*,
   735 F.3d 72 (2d Cir. 2013) ................................................................................................. 7

*Guaranty Trust Co. v. United States*,
   304 U.S. 126 (1938) .......................................................................................................... 9

*Micula v. Gov't of Rom.*,
   104 F. Supp. 3d 42 (D.D.C. 2015) .................................................................................... 4

*Micula v. Gov't of Rom.*,
   404 F. Supp. 3d 265 (D.D.C. 2019), *aff'd,* 805 F. App'x 1 (D.C. Cir. 2020) ............... 4, 6

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
   863 F.3d 96 (2d Cir. 2017) ............................................................................................ 5, 7

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
   Civil Action No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128 (D.D.C. May
   21, 2019) ........................................................................................................................ 5, 8

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
   No. 18-cv-594 (CRC), 2020 U.S. Dist. LEXIS 229283 (D.D.C. Dec. 4, 2020) ................ 8

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*,
   No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) ............................. 9

*\*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*,
   Civil Action No. 20-129 (RC), 2021 U.S. Dist. LEXIS 18485 (D.D.C. Feb. 1,
   2021) .................................................................................................................................. 5

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) .......................................................................................................... 6

*Tatneft v. Ukraine*,
   301 F. Supp.3d 175 (D.D.C. 2018), *aff'd* 2019 U.S. App. LEXIS 15787 (D.C.
   Cir. May 28, 2019), *cert. denied* 2020 U.S. LEXIS 392 (U.S. Jan. 13, 2020) .................. 8

*\*TECO Guat. Holdings, LLC v. Republic of Guat.*,
   No. CV 17-102 (RDM), 2018 U.S. Dist. LEXIS 168518, 2018 WL 4705794
   (D.D.C. Sept. 30, 2018) ..................................................................................................... 5

*Tenaris S.A. v. Bolivarian Republic of Venez.*,
   No. 18-cv-1371 (CRC), 2020 U.S. Dist. LEXIS 106397 (D.D.C. June 17,
   2020) .................................................................................................................................. 9

*Tidewater Inv. SRL v. Bolivarian Republic of Venez.*,
    No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469 (D.D.C. Dec. 17,
    2018) ..................................................................................................................................7

**Rules**

Fed. R. Civ. P. 4(j)(1) ...................................................................................................................3

**Statutes**

*22 U.S.C. § 1650a................................................................................................................ *passim*

28 U.S.C. § 1330(a) .......................................................................................................................3

28 U.S.C. § 1605(a)(1).................................................................................................................7, 8

28 U.S.C. § 1605(a)(6)....................................................................................................................6

28 U.S.C. § 1608.............................................................................................................................3

Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* ........................................................................5, 8

**Treaties and International Agreements**

Agreement between the Swiss Confederation and the Government of the Republic
    of Venezuela on the Reciprocal Promotion and Protection of Investments
    dated November 18, 1993, which entered into force on November 30, 1994 .......................2, 7

Convention on the Recognition and Enforcement of Arbitral Awards, 330
    U.N.T.S. 38 (1958) .................................................................................................................8

Convention on the Settlement of Investment Disputes Between States and
    Nationals of Other States, 17 U.S.T. 1270 (Mar. 18, 1965) ........................................... *passim*

**Other Authorities**

CHRISTOPH H. SCHREUER, THE ICSID CONVENTION: A COMMENTARY, 1139 (2d
    ed. 2009) ................................................................................................................................4

HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, *available at*
    https://www.hcch.net/en/states/authorities/details3/?aid=280 (last visited Mar.
    22, 2021) ................................................................................................................................3

Restatement (Third) of the Foreign Relations Law of the United States, § 208,
    cmt. a (Am. L. Inst. 1987)......................................................................................................9

Statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Department of State
    on the US Act implementing the ICSID Convention, 5 ILM 820, 826 (1966)........................5

Plaintiffs and Arbitration Award Creditors Koch Minerals Sàrl ("KOMSA") and Koch Nitrogen International Sàrl ("KNI") (collectively "the Koch Plaintiffs" or "Plaintiffs"), by and through the undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment.[1]

Plaintiffs brought these proceedings pursuant to 22 U.S.C. § 1650a ("Section 1650a") to enforce an international arbitration award, ECF Nos. 7-1, 7-2 (together, "Award"), rendered against the Bolivarian Republic of Venezuela ("Venezuela" or the "Defendant") by an international arbitral tribunal ("Tribunal") duly convened and constituted under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, 17 U.S.T. 1270 (Mar. 18, 1965) (the "ICSID Convention"). *See* ECF Nos. 1, 7. Section 1650a mandates that ICSID awards "***shall*** be enforced and ***shall*** be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." Venezuela has nevertheless done all it can to postpone the inevitable. Now, however, this Court has held that it has personal jurisdiction over Venezuela and subject matter jurisdiction over the Award itself. No further evidence is required. No further defenses are applicable. The Court should enforce the pecuniary obligations of the Award against Venezuela, as required under both Section 1650a and the ICSID Convention—an international law obligation of the United States.

## BACKGROUND

More than a decade ago, then-Venezuelan President Hugo Chavez unlawfully expropriated Plaintiffs' investment in FertiNitro—an operation of two fertilizer plants located in Venezuela. *See* ECF No. 7 (Plaintiffs' Amended Complaint) ¶¶ 12–13. In response, in June of 2011, Plaintiffs,

---

[1] References in this Memorandum to "Sixth Yanos Decl. Ex. [_]" are to the exhibits attached to the supporting Declaration of Alexander A. Yanos, dated March 22, 2021, which Plaintiffs attach to their memorandum supporting their Motion for Summary Judgment.

1

as Swiss nationals, filed a Request for Arbitration with ICSID against Venezuela in accordance with the Agreement between the Swiss Confederation and the Government of the Republic of Venezuela on the Reciprocal Promotion and Protection of Investments ("Swiss-Venezuelan BIT") dated November 18, 1993, which entered into force on November 30, 1994.  *Id.* ¶ 15.  Six years of proceedings, in which Venezuela took an active part, culminated in the Award rendered in Plaintiffs' favor on October 30, 2017.  *Id.* ¶¶ 17–18; *see also* ECF No. 7-1.

Finding that Venezuela unlawfully expropriated Plaintiffs' interest in FertiNitro, the Award ordered that Venezuela compensate KOMSA and KNI US$ 140,250,000 and US$ 184,250,000 respectively.  *Id.* ¶ 19–20.  The Tribunal also awarded Plaintiffs pre-award interest, legal costs, arbitration costs, and post-award interest.  *Id.* ¶¶ 21–23.  Thereafter, the Tribunal accepted Venezuela's request for rectification of an error calculating the principle amount of the award and reduced KNI's compensation from US$184,800,000 to US$166,700,000.  *Id.* ¶ 26; *see also* ECF No. 7-2 ¶74. (Decision on Rectification).  The Tribunal's Decision on Rectification, ECF No. 7-2, is now treated as part of the October 30, 2017 Award, ECF No. 7-1.  *See* ICSID Convention, Art. 49(2).  Together, Exhibits 1 and 2 of Plaintiffs' Amended Complaint constitute the full, final, and authentic Award.

Venezuela refused to compensate Plaintiffs, forcing the commencement of these proceedings in November of 2017 to enforce the Award in the United States.  *See* ECF No. 1. While Venezuela delayed its appearance in these proceedings, it filed an application to annul the Award before an *ad hoc* ICSID annulment committee ("Annulment Committee") on August 8, 2018.  *See* ECF No. 25-4 ¶ 1 (ICSID Annulment Procedural Order No. 1).  The institution of the annulment proceedings automatically triggered a provisional stay pursuant to the ICSID Convention and Arbitration Rules.  *Id.* ¶ 3.  The Annulment Committee lifted the stay after

Venezuela failed to post the security it had required as a condition for the extension of the stay. *Id.* ¶¶ 20, 29.

In August of 2019, Venezuela finally entered an appearance in this case, filing a "Motion to Set Aside the Clerk's Entry of Default and to Dismiss the Complaint for Lack of Personal Jurisdiction." ECF No. 30. After substantial briefing and oral argument, the Court denied Venezuela's motion on December 23, 2020, finding that Plaintiffs properly perfected service by transmitting the pleadings to Venezuela's Central Authority in accordance with the Hague Service Convention,[2] as mandated by the Foreign Sovereign Immunities Act ("FSIA").[3] ECF Nos. 45, 46. In response, Venezuela sought anappeal to Judge Jackson. ECF No. 48. The Court rejected Venezuela's appeal, treating it as a motion for reconsideration, and set a deadline for hearing the current Motion for Summary Judgment. *See* ECF No. 51.

---

[2] *See* Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, 658 U.N.T.S. 163 (Nov. 15, 1965) (entered into force Feb. 10, 1969). Under the Convention, signatory states must each designate a "Central Authority" to "receive requests for service" from the other signatory states. Hague Service Convention, art. 2. Venezuela has designated its Office of Consular Relations of Venezuela's Ministry of the Popular Power for External Relations (*Ministerio del Poder Popular para Relaciones Exteriores*) ("Foreign Ministry") as its Central Authority. *See Venezuela – Central Authority & practical information*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/states/authorities/details3/?aid=280 (last visited Mar. 22, 2021).

[3] The FSIA bestows original jurisdiction upon federal courts in cases brought against foreign states "as to any claim for relief . . . with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). Service of process upon the foreign state must abide by 28 U.S.C. § 1608. *See* Fed. R. Civ. P. 4(j)(1). Section 1608 provides several avenues for service. The applicable avenue here allowed delivery of the pleadings "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). The Hague Convention is the international convention in question as both the United States and Venezuela are signatories.

**ARGUMENT**

I.   **Section 1650a Requires The Court To Enforce An ICSID Award And Give It Full Faith And Credit.**

The federal statute implementing the ICSID Convention, 22 U.S.C. § 1650a, mandates that "[t]he pecuniary obligations imposed by [ICSID awards] *shall* be enforced and *shall* be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a) (emphasis added).

Section 1650a's requirements mirror those of the ICSID itself. Once a tribunal renders a final award, Article 54 of the ICSID Convention mandates that "[e]ach Contracting State *shall* recognize [the] award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state." ICSID Convention, art. 54(1) (emphasis added). The mandatory enforcement of an ICSID Award is consistent with the structure of the ICSID Convention which only allows ICSID awards to be reviewed within the self-contained annulment framework established by Article 52 of the ICSID Convention itself. *See also* ICSID Convention, art. 53 (stating that ICSID awards "shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention"); *Micula v. Gov't of Rom.*, 104 F. Supp. 3d 42, 45 (D.D.C. 2015) ("Where ICSID has jurisdiction, its decisions are final and are subject to review only within ICSID itself.").

"A federal court's role in enforcing an ICSID award is limited," therefore, by design.[4] *See Micula v. Gov't of Rom.*, 404 F. Supp. 3d 265, 275 (D.D.C. 2019), *aff'd,* 805 F. App'x 1 (D.C. Cir.

---

[4] *See* Sixth Yanos Decl. Ex. 1, CHRISTOPH H. SCHREUER, THE ICSID CONVENTION: A COMMENTARY, 1139 (2d ed. 2009) ("The Convention provides for a number of remedies and review procedures . . . the System of review under the Convention is self-contained and does not permit any external review. This principle also extends to the stage of recognition and enforcement

4

2020). A Court cannot "examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'" *TECO Guat. Holdings, LLC v. Republic of Guat.*, No. CV 17-102 (RDM), 2018 U.S. Dist. LEXIS 168518 at *4–5 (D.D.C. Sept. 30, 2018) (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 102 (2d Cir. 2017)); *see also OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128, at *11 (D.D.C. May 21, 2019) (noting courts may not "re-examine the propriety of the award."). Lest there be any doubt, the summary nature of the Court's role is further confirmed by Section 1650a's instruction that "[t]he Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.").

It follows that "[s]ummary judgment to confirm and enforce an ICSID arbitration award should be granted where the party seeking recognition or enforcement provides a copy of the award to the relevant court, *see* ICSID Convention Art. 54(2), and where there are no defenses to enforcement." *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 20-129 (RC), 2021 U.S. Dist. LEXIS 18485, at *9 (D.D.C. Feb. 1, 2021).

---

of ICSID awards. A domestic court or authority before which recognition and enforcement is sought is restricted to ascertaining the award's authenticity. It may not re-examine the ICSID tribunal's jurisdiction. It may not re-examine the award on the merits. Nor may it examine the fairness and propriety of the proceedings before the ICSID tribunal."). *See also id*. at 1140-41 ("The Convention's drafting history shows that domestic authorities charged with recognition and enforcement have no discretion to review the award once its authenticity has been established.") (citing Sixth Yanos Decl. Ex. 2, Statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Department of State on the US Act implementing the ICSID Convention, 5 ILM 820, 826 (1966)).

## II.   The Court Has Personal Jurisdiction Over Venezuela.

If three years of litigating before this Court have established ***anything***, it is that the Plaintiffs' have effectively served Venezuela, therefore giving the Court personal jurisdiction over Venezuela in accordance with the FSIA.  *See generally* ECF No. 30-1 (Motion to Dismiss or Set Aside arguing faulty service); ECF No. 46 at 8 (Order finding service perfected under Article 15 of the Hague Service Convention); *see also* ECF No. 51 at 2 (Order rejecting Venezuela's attempt to "appeal" the Court's order).

## III.   The Court Has Subject Matter Jurisdiction.

The Court also has subject matter jurisdiction over these proceedings.  While foreign states enjoy presumptive immunity under the FSIA, an exception exists under 28 U.S.C. § 1605(a)(6)—otherwise known as the "arbitration exception." *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (finding that, under the FSIA, "a foreign state is presumptively immune from the jurisdiction of the United States courts[,] unless a specified exception applies."). Section 1605(a)(6) provides in relevant part that "[a] foreign state ***shall not*** be immune" in cases brought "to confirm an award made pursuant to [] an agreement to arbitrate" so long as "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6) (emphasis added).  Here, the ICSID Convention is exactly "a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." *See* ICSID Convention, art. 54 ("Each Contracting State ***shall*** recognize [the] award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state."); Sixth Yanos Decl., Ex 3, Database of ICSID Member States, ICSID World Bank Group (listing contracting states); *see also Micula*, 404 F. Supp. 3d at 277 ("Courts consistently have held that

6

the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID awards.") (citing *Blue Ridge Invs., L.L.C. v. Republic of Arg.*, 735 F.3d 72, 85 (2d Cir. 2013) ("[E]very court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do.")); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, at * 10 (D.D.C. Dec. 17, 2018) (same).

Venezuela's agreements to both the Swiss-Venezuelan BIT and the ICSID Convention also trigger a second exception to the FSIA—the "waiver exception." Section 1605(a)(1) of the FSIA provides that a foreign state may waive its sovereign immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). By agreeing to arbitrate disputes arising with Swiss investors under a treaty that, in turn, provided for arbitration under the ICSID Convention to which it was then also a party, Venezuela impliedly waived any immunity with respect to the proceedings like this one involving the enforcement of any resulting arbitration awards.[5] Venezuela knew that in agreeing to the Swiss-Venezuelan BIT it was agreeing to the ICSID arbitration of disputes arising under its terms. As a signatory of the ICSID Convention itself, Venezuela was likewise on notice of Article 54's obligations on all Contracting States—including the United States—with respect to the enforcement of awards. Venezuela consequently impliedly waived any objection to jurisdiction in United States enforcement proceedings brought under Section 1650a. *See Mobil Cerro*, 863 F.3d at 104 ("FSIA's immunity provisions do not shield a foreign sovereign from

---

[5] That Venezuela denounced the ICSID Convention in 2012 is of no consequence to the Court's jurisdiction in these proceedings because the underlying arbitration between Plaintiffs and Venezuela began in 2011. *See Tidewater*, 2018 U.S. Dist. LEXIS 211469, at *10 n.3. Per the ICSID Convention, denunciation shall "not affect the rights or obligations under [the] Convention of [Venezuela] arising out of consent to the jurisdiction of the Centre given by [it] before such notice was received." *Id*. (quoting ICSID Convention, art. 72).

7

federal courts' exercise of jurisdiction over a civil action to enforce an ICSID award: the waiver and arbitration exceptions to immunity . . . apply."). *Cf. Process & Indus. Devs. Ltd. v. Fed. Republic of Nig.*, No. 18-cv-594 (CRC), 2020 U.S. Dist. LEXIS 229283, at *22 (D.D.C. Dec. 4, 2020) (finding an implied waiver when Nigeria agreed to be bound by the Convention on the Recognition and Enforcement of Arbitral Awards, 330 U.N.T.S. 38 (1958) ("New York Convention") (codified at Ch. 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*)); *Tatneft v. Ukr.*, 301 F. Supp.3d 175 (D.D.C. 2018), *aff'd* 771 F. App'x 9 (D.C. Cir. 2019), *cert. denied* 140 S. Ct. 901 (2020) (holding that Ukraine waived its sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) by ratifying the New York Convention).

### IV.   No Other Grounds Exist To Deny Enforcement Of The Award.

Section 1650a's instruction that "[t]he pecuniary obligations imposed by [ICSID awards] ***shall*** be enforced and ***shall*** be given the same full faith and credit as if the award were a final judgment," closely limits the ability of a foreign state to defend against or otherwise object to a United States federal court's confirmation and execution of an award rendered under the ICSID Convention. 22 U.S.C. § 1650a(a) (emphasis added). With the Court's personal and subject matter jurisdiction established, indeed, there are no other defenses available to Venezuela where no party disputes the Award's authenticity. *See OI European Grp.*, 2019 U.S. Dist. LEXIS 85128, at *14 ("Since there has been no grounds presented to contest the authenticity of the Award, the Court will enter judgment in favor of the plaintiff and confirm the Award"). Even so, given Venezuela's mission to delay and obfuscate, Plaintiffs expect Venezuela to point to extrinsic events to suspend, if not deny, enforcement of the Award. None of these arguments will hold water, though.

*First*, Venezuela may point to the pending proceedings before the *ad hoc* Annulment Committee. But these annulment proceedings should not delay the Court's enforcement of the Award where the Annulment Committee has itself decided that they should not and instead lifted

8

its provisional stay after Venezuela's failure to post the security it had mandated as a precondition to the extension of the provisional stay on enforcement. *See* Procedural Order No. 1 ¶¶ 20, 29.[6]

*Second*, the United States' recognition of Juan Guaidó as Interim President of Venezuela has no bearing on the Court's enforcement of the Award under Section 1650a. The Award's liability attaches to Venezuela itself as a sovereign state, not to a particular government. It is axiomatic that subsequent state governments inherit all obligations and liabilities of former governments. *See Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, 2019 U.S. App. LEXIS 17543, at *1–2 (D.C. Cir. May 1, 2019) (recognizing the Guaidó government as the proper representative of Venezuela in an action to confirm an international arbitration award rendered during the Maduro administration) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137 (1938) ("the rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it")); *see also* Restatement (Third) of the Foreign Relations Law of the United States, § 208, cmt. a (Am. L. Inst. 1987) ("When the state ceases to exist, its capacities, rights, and duties terminate. They are not affected by a mere change in the regime or in the form of government or its ideology").

*Third* and finally, United States sanctions on Venezuela do not impede the relief Plaintiffs seek under Section 1650a. *See*, *e.g.*, *Tenaris S.A. v. Bolivarian Republic of Venez.*, No. 18-cv-1371 (CRC), 2020 U.S. Dist. LEXIS 106397, at *9 (D.D.C. June 17, 2020) (explaining that the U.S. Treasury's licensing regime applies to "execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked

---

[6] While the Court raised the possibility that Venezuela might have since paid security, *see* ECF No. 46 at 4, this is not the case. Sixth Yanos Decl. ¶ 4. The October 14, 2019 ICSID docket entry noted in the Court's Order in actuality reflected only Venezuela's payment of certain ICSID administrative fees. *Id.* ¶ 5. Venezuela has not provided security for the Award. *See id.* ¶¶ 4-5.

9

pursuant" to applicable sanctions but not to the enforcement of an ICSID Award pursuant to Section 1650a).

In short, there is no obstacle to the Court's fulfilling Section 1650a's mandate that an ICSID award "shall" be enforced and given "full faith and credit." In accordance Section 1650a and in performance of the United States' obligations under the ICSID Convention and, the Court must enforce Plaintiffs' ICSID Award and enter judgment accordingly.

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' Motion for Summary Judgment and:

(1) enter judgment on the pecuniary obligations of the Award against Venezuela;

(2) order Venezuela pay to KOMSA US$140,250,000 in compensation, plus pre-award interest from October 11, 2010 to October 30, 2017, calculated at the US$ Libor 6-month rate plus 2%, compounded every six months (which amounts to US$28,419,011.14), and post-award interest from October 30, 2017, to the date of satisfaction at a rate of US$ Libor 6-month rate plus 2%, compounded every six months;

(3) order that Venezuela pay to KNI US$166,700,000 in compensation, plus pre-award interest from October 11, 2010 to October 30, 2017 (which amounts to US$33,778,603.62), calculated at US$ Libor 6-month rate plus 2%, compounded every six months, and post-award interest from October 30, 2017, to the date of satisfaction at a rate of US$ Libor 6-month rate plus 2%, compounded every six months; and

(4) order that Venezuela pay jointly to KNI and KOMSA US$17,436,085.10 plus US$628,836.435, or US$18,064,921.53, plus post-award interest on this sum from October 30, 2017, to the date of this Court's judgment; and

(5) order that Venezuela pay post-judgment interest pursuant to 28 U.S.C. § 1961(a) starting from the date of this Court's final judgment.

Dated: March 22, 2021
New York, New York

Respectfully submitted,

Alexander A. Yanos
Carlos Ramos-Mrosovsky
Rajat Rana
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
alex.yanos@alston.com
carlos.ramos-mrosovsky@alston.com
rajat.rana@alston.com

*Counsel for Plaintiffs Koch Minerals Sàrl and Koch Nitrogen International Sàrl*

11